## MANCHESTER v
## YOUNGSTOWN SHEET & TUBE CO

Ohio Appeals, 7th Dist, Mahoning Co

No 2357. Decided June 4, 1937

Harrington, Huxley & Smith, Youngstown, for plaintiff-appellee.

Manchester, Ford, Bennett & Powers, Youngstown, for defendant-appellant.

## OPINION

By CARTER, J.

This cause is in this court on appeal on questions of law. The action is one for wrongful death. The issues having been joined, the cause came on for trial to the court and jury, resulting in a verdict for plaintiff-appellee in the sum of $31,963.00, and judgment rendered thereon by the trial court. The errors urged are as follows:

1. The court erred in failing to instruct the jury that the crane operator, Dzuracki, was a servant of Rust Company at the time of the accident.

2. Defendant's employes were guilty of no negligence in the premises.

3. The judgment is against the weight of the evidence in that same is grossly excessive.

4. The court erred in permitting and condoning misconduct of plaintiff's counsel in his argument to the jury.

Plaintiff's decedent, Don Yeager, was an employe of the Rust Engineering Company, an independent contractor, doing certain work for the defendant on the construction of a new mill. Defendant's building, in which the accident occurred, was some six to seven hundred feet in length east to west, and about seventy-five feet in width north and south. Near the north wall and about two hundred feet west of the east end of the building was a rectangular pit in the floor, approximately thirty feet long and twenty feet wide. This pit extended four feet below the floor level and had a barricade around it some three feet high. The pit was to be used as a base for a machine. In finishing the pit for this purpose it was necessary to chip concrete from certain parts of it, and Yeager and another Rust Engineering Company employe were engaged in doing this work, using a compressed air chipper for the purpose. At the time of his injury which resulted in his death, Yeager was sitting in this pit, his legs stretched in front of him, chipping this concrete. On the north and south wall of the building, about twenty to twenty-five feet from the floor, was a crane track which ran the entire length of the building. On this track was an over-head crane, operated by electricity. The crane had on it a cab or control room situated under the structure of the crane and at the south end of it. The crane extended across the width of the building by means of a steel frame. On this frame was what is referred to as a "trolley." This is a movable carriage which runs back and forth on the crane frame. The crane proper ran east and west. The carriage or trolley moved north and south. In traveling from the east end of the building toward the west end, the crane would pass directly over the pit wherein Yeager was working.

On the day of the accident, March 29th, 1935, defendant's rigger crew was engaged in raising a large pipe, a section of a gas line, from the floor up to a position on the wall of the building. This was a steel pipe, some eighteen inches in diameter and twenty-five to thirty feet in length, V shaped, so it would fit in a corner, and weighed about a ton.

The rigger crew had fastened a set of blocks or falls to the girders of the roof, above the crane track, and connected the other end of the blocks to the pipe by means of a sling line at the bend in the pipe. This raising operation was taking place about twenty feet east of the pit where Yeager was working, and in line with it. The rigger crew raised the pipe in the air until it was standing on its legs; that is, in a V shape. The man power was insufficient to raise the pipe with one set of blocks, and another set was to be employed. This is done by hooking a second set of blocks into the fall line of the first set, thereby doubling the leverage and

making the lift much easier. With the pipe in the position as above indicated, the rope holding it was snubbed around a housing, with a man or two standing by, until the second set of blocks were secured. While the pipe was suspended as above indicated, the crane without warning was operated toward the west end of the mill, and in so doing struck the rope, carried the pipe somewhat forward till the rope broke, the pipe falling and striking plaintiff's decedent, causing death shortly thereafter.

The Rust Engineering Company, in doing its work under its contract with the Youngstown Sheet & Tube Company, defendant herein, frequently needed the use of a crane, and there had been some arrangement, which will be referred to later in this opinion, by which the Rust Engineering Company could use in their work, as independent contractor, the crane. Dzuracki was the crane man, and when he went to work the day of the accident, he was ordered by his foreman, the Youngstown Sheet & Tube Company, to go and operate the crane. For a considerable time prior to the accident the craneman was hauling concrete from north to south on the extreme east end of the mill for the Rust Engineering Company; that is he was running the trolley back and forth on the crane, carrying concrete. Finally a bucket of concrete was fastened to the crane and the operator was directed by a foreman of the Rust Engineering Company to take it to the west end of the mill, and on this trip the accident occurred.

Yeager, at his death, was twenty-four years of age, married, had one child, age two, and one child born several months after his death. He was employed by the Rust Engineering Company as a laborer, and received at that time 45c per hour.

The allegations of the amended petition referable to the claimed liability of the defendant company are as follows: That the defendant, the Youngstown Sheet & Tube Company, is an Ohio corporation, and as such operates and maintains a large plant for the manufacture and production of iron and steel and products usually manufactured therefrom, in the city of Campbell, Mahoning County, and was at the time of the accident constructing a large plant, known as a wide strip mill, for the manufacture of wide sheets of steel; that the Rust Engineering Company was given a contract for the concrete floor work of the building; that Donald Yeager, the deceased was employed by the Rust Engineering Company to do certain work upon the concrete floor of the building, and was in the course of his employment when injured.

It is alleged that The Youngstown Sheet & Tube Company, through its agents and employes, attempted to erect a large steel pipe in the building, directly over and above the place where plaintiff's decedent was required to work. It is further alleged that the defendant company was negligent in the handling of the pipe, in that it permitted the same to be suspended by ropes which were inadequate to support the same securely, and which were liable to be cut if struck by an object while supporting this heavy pipe, and that the defendant company was further negligent in causing and permitting a crane to be operated so as to come into violent contact with said ropes, thereby cutting and severing the ropes and permitting the steel pipe to fall, when the defendant company knew, or, in the exercise of ordinary care, should have known that to come in contact with these ropes would sever the same and cause the pipe to fall upon plaintiff's decedent, and that the company was further negligent in attempting to suspend said steel pipe over the place where plaintiff's decedent was required to work, and in so doing without giving any warning whatever to plaintiff's decedent.

To this amended petition an answer was filed in which there are several admissions, to-wit: That the plaintiff is the duly appointed, qualified and acting administrator de bonis non of the estate of Donald Yeager, deceased; that it is a corporation and engages generally in the manufacture of iron and steel products, and that it has a plant in the city of Campbell, Mahoning County, and at the time of the happenings complained of in plaintiff's petition, defendant had under construction an addition to their plant for the purpose of manufacturing hot strip steel; admits that the Rust Engineering Company had a contract with the defendant for the doing of certain work in the construction of defendant's mill; that plaintiff's decedent was employed by the Rust Engineering Company, and that on or about March 29th, 1935, plaintiff's decedent was working in the plant of this defendant, and that plaintiff's decedent received injuries, as a result of which he died on the 30th day of March, 1935. Defendant then denies each and every statement, averment and allegation in plaintiff's petition contained, not admitted to be true.

There was also set forth in the answer a defense of contributory negligence on the part of the deceased, which was withdrawn as a defense. A reply was filed, which was a general denial of each and all of the statements, averments and allegations of the answer, except such as are admissions of facts stated in the petition.

The first error urged in the brief of appellant is that the court erred in failing to instruct the jury that the crane operator, Dzuracki, was a servant of Rust Company at the time of the accident. It is the claim of appellant that Dzuracki, the operator of the crane, was at the time of the accident an employe of the Rust Engineering Company, the independent contractor, by reason of an agreement by and between the Rust Engineering Company and the defendant, that should the Rust Engineering Company need the use of this crane in its construction work, the defendant would supply it upon request, and that the Rust Engineering Company was given the exclusive right to use such crane until it had finished with it. Mr. Ralph, superintendent of construction for defendant company, testified, in substance, as follows:

"Q. Mr. Ralph, let me ask you this question, did you have conversation with the superintendent of the Rust Engineering Company relative to the use of your crane equipment by them during the progress of that work?
A. Yes.
Q. Tell the jury the name of the man you had that conversation with?
A. Mr. Kelly, superintendent of Rust Engineering.
Q. State, in substance, to the jury what that conversation was?"

There was an objection to this question. "Court: I think he may give what he said but I don't think he can give what the other man said.
Q. All right, then, what, if anything, did you say to Mr. Kelly with reference to the use of the Sheet & Tube Company's crane?
A. I told Mr. Kelly that whenever they had use for the crane to pour concrete, if they would give us a little notice we would arrange for a crane for their exclusive use while they are pouring concrete.
Q. Do you know whether or not such arrangements were made during the course of the work?
A. Oh, they were.

Q. Do you know, Mr. Ralph whether or not a request had been made by the Rust Engineering people for the use of the Sheet & Tube crane in the cold strip mill on that night?
A. That is right. There was.
Q. Your answer is, such a request was made by the Rust Engineering Company?
A. Yes, sir.
Q. And do you know whether or not the crane was being used by the Rust Engineering Company at the time it ran into the rope which resulted in the pipe falling?
A. It was."

On cross examination the following questions were propounded to Mr. Ralph:
"Q. The Rust Engineering Company didn't have a crane man employed to operate that crane?
A. No.
Q. Now, in the matter of this work that was being performed in the mill, the Youngstown Sheet & Tube Company employed the man to operate the crane, didn't they?
A. That is right.
Q. There wasn't anybody during all of that time that operated the crane except employes of the Youngstown Sheet & Tube Company, isn't that right?
A. That is right.
Q. There was no one had any authority to operate that crane except these employes of the Sheet & Tube Company, were there?
A. When it was turned over to Mr. Kelly it was under his charge.
Q. Was there anyone had any authority to operate the crane at all except the employes of the Youngstown Sheet & Tube Company?
A. No."

Many cases have been cited by appellant, which it is urged sustain its contention that under the above arrangement Dzuracki was a servant of the Rust Engineering Company. Was Dzuracki the servant of the engineering company or the servant of the defendant voluntarily assisting the engineering company in its work, in which the defendant company was interested? No compensation was to be paid Dzuracki by the Rust Engineering Company for services performed. He was paid for the services thus performed by defendant. The Rust Engineering Company could not have discharged Dzuracki. Of course, it might refuse his services if it saw fit, but could not discharge him as an employe. The

Rust Engineering Company could use Dzuracki for no other purpose than the running of the crane, could not compel him to work any longer than his regular hours under his employment with defendant, and certainly the defendant had authority to order Dzuracki to leave the Rust Engineering Company work, for the reason that there was no legal obligation on the part of defendant to carry out this arrangement if it desired to not so do, as this arrangement was made subsequent to the making of the original contract, and there is no evidence of any consideration entering into this arrangement as a basis for the enforcement of this agreement. True, it might be a moral obligation by reason of the subsequent arrangement; however, not a legal one, quite clearly establishing that defendant had not resigned control over the craneman Dzuracki.

In the case of Chamberlain v Lee, 148 Tenn. 637, 257 SW 415-417, a servant of an independent contractor undertook to make some repairs to an elevator in a building owned by a third person. The elevator operator, who was a servant of the owner of the building, was told to operate the elevator in such a manner as he might be directed by the servant of the independent contractor. During the operating of the elevator the servant of the independent contractor was injured and brought suit against the owners of the building who were held liable. Liability was predicated on the proposition that although the elevator operator, the owner's servant, was directed to place himself for certain purposes under the control of the independent contractor, the owner had not surrendered complete control over the servant. In its opinion the court say:

"This does not make out a case of lending a servant. The servant was put under the control of plaintiff for one purpose alone; that is, to move the car up and down as plaintiff desired while the particular job was being done. The elevator car was put under the control of the plaintiff for the time, but it was put under his control along with its attendant, who remained in the service of the defendants. There is nothing to show that plaintiff could have discharged this boy, and put another boy to running the elevator at this time. Plaintiff certainly had no right to use this elevator boy for any purpose in connection with the other work than running the elevator up and down. The plaintiff could not have required the elevator boy to remain on duty for a longer period than his regular hours under his contract with defendants. In order to escape responsibility for the negligence of his servant on the theory that the servant has been loaned the original master must resign full control of the servant for the time being."

To like effect see Valdick v LeClair, 289 Pac. 673; 39 C.J. 275; 55 A.L.R. 264; Moss v Chronicle Publishing Co., 258 Pac. 88; 55 A.L.R. 258; 39 C.J. §668, pages 557, 558, wherein the author states:

"If, with a view to expediting the business or furthering the interests of his general master, the servant assists the servants of another in their work, he is not the fellow servant of those whom he is assisting, although, acting under general orders from his employer to assist such servants, he does so at their request."

Also Standard Oil Company v Anderson, 212 U. S. 215; Peters v United Studios, Inc., 277 Pac. 156, wherein the court say:
"When a master hires out, under a rental agreement, the services of employe for operation of instrumentality owned by the master, together with use of instrumentality, without relinquishing power to discharge servant, legal presumption is that, although hirer directs servant where to go or what to do in performance of work, the servant as operator of instrumentality remains, in the absence of agreement to contrary, servant of general employer, and negligence of servant constitutes that of owner of instrumentality."

Also Marion Steam Shovel Co. v Bertino, 82 Fed. (2nd) 541 and 547; McLamb v E. I. DuPont De Nemeours, 79 Fed. (2nd) 966; 21 O. J. p. 646, §22. Other cases might be cited to the same effect.

Mike Rosum testified that he was foreman of the rigger crew. He testified that he gave orders with reference to the operation of the crane that night, and said that he sent Dzuracki to run the crane and that he had received orders to send a man to work for the Rust Engineering Company. Mr. Dzuracki, the crane operator, testified as follows:

"Q. Were you employed by the Youngstown Sheet & Tube Company in March, 1935, last year?
A. Yes, sir.
Q. And particularly on March 29th of last year were you employed there?

A. Yes, that was on Saturday.

Q. What kind of work were you doing?

A. At that time I was working on the crane.

Q. By whom were you employed?

A. Rust.

Q. Who paid you for the work on the 29th of March, 1935?

A. Sheet & Tube.

Q. When did you start operating the crane on the 29th of March?

A. About three o'clock when he began his turn.

Q. How did you know to go and run the crane when you reported for work?

A. My boss sent me there, Mike Rosum.

Q. Who was Mike Rosum?

A. Sheet & Tube foreman.

Q. For what department?

A. Rigger department.

Q. And is he the man who told you to go and run the crane?

A. He told me to go and work on the crane."

This court is satisfied that under the evidence in this case defendant appellant certainly can not complain when ▉▉▉▉▉ ▉ the court permitted the jury to decide as to whether Dzuracki, at the time of the accident, was a servant of the Rust Engineering Company or of defendant. The court charged fully on this subject and the jury apparently concluded that Dzuracki was the servant of defendant at the time of the accident. There was ample evidence before the jury upon which to base their verdict. There was no error on the part of the trial court in refusing to instruct the jury that Dzuracki was a servant of Rust Engineering Company at the time of the accident.

The second error urged is that defendant's employes were guilty of no negligence in the premises. Assuming that the jury based their verdict on the theory that Dzuracki was the employe of the defendant at the time of the accident, such a claim would be unavailing for the reason that at least a jury question was presented as to whether the defendant company was, through Dzuracki, guilty of negligence directly and proximately causing the death of Yeager. Certainly such would not be a question of law for the court to determine, and there is nothing in the evidence which in any way raises the issue of contributory negligence on the part of the deceased. Assuming further that the jury concluded that Dzuracki at the time of the accident was the employe or servant of the Rust Engineering Company, there are other claims of negligence alleged and urged by plaintiff otherwise than the negligence of Dzuracki, as hereinbefore indicated in this opinion. The testimony of Steve Yanesko, Mike Dzuracki, John Novotny, John Macklin and Mike Rosum discloses that the heavy steel pipe was suspended in the air only a few feet to the east of where the deceased was working; that the Sheet & Tube Company attempted to suspend the pipe by the use of ropes which plaintiff claims were insufficient in strength to support the pipe; that defendant's employes left the pipe suspended in that position in close proximity to the plaintiff's decedent and went in search of further rope and tackle without giving any warning to plaintiff's decedent of the presence of the pipe, or any warning whatever to the operator of the crane to be on his guard to prevent running into the ropes. These were questions for the jury to determine. No interrogatories were submitted to the jury on the question as to whether Dzuracki was at the time of the accident an employe of the Rust Engineering Company or of defendant. We are therefore unable to determine whether the verdict was based upon the theory that Dzuracki was an employe of the defendant at the time, or whether the jury based its verdict on the urged negligence of the employes of defendant in their attempt to hoist the pipe to its proper place. Whether such employes were negligent in ▉▉▉▉▉ the premises and whether such negligence was a direct and proximate cause of the death of the deceased, were questions for the jury to determine under proper instructions, and the court did instruct the jury on these issues and no error is urged as to the charge of the court. This court is unable to agree with counsel for appellant that there was as a matter of law no negligence on the part of defendant. We might call to the attention of counsel a recent case decided by the Supreme Court of the state, being that of Hazian, an Infant, appellant v The Crucible Steel Casting Company, appellee, found in the Ohio Bar Association report of May 31, 1937. The first paragraph of the syllabi is as follows:

"In an action wherein defendant's liability depends upon proof of a master servant relation, such relation is prima facie established by showing the alleged servant was performing services peculiar to the defendant's business or affairs on and about

the latter's property and acts done in the rendition of such services may be found to be within the scope of employment.

"3. Where the owner or occupier of premises engages an independent contractor to do work thereon, an employe of the contractor while executing the work is impliedly there at the request of the owner and is an invitee toward whom the owner owes the duty of exercising ordinary care.

"4. In an action to recover damages for personal injuries where plaintiff makes out a prima facie case against the defendant on the questions of negligence and proximate cause, the trial court commits reversible error in arresting the testimony from the jury and rendering judgment for the defendant."

Assuming that Dzuracki was an employe of the Rust Engineering Company at the time, it was nevertheless the duty of defendant, through its employes, to exercise ordinary care in order that ██ injury would not overtake decedent, who was at the time of the accident an employe of the Rust Engineering Company, the independent contractor.

The third error urged is that the judgment is against the weight of the evidence in that same is grossly excessive. We will not prolong this opinion longer by citing the evidence pro and con dealing with this issue. Suffice it to say that we have considered the evidence relative thereto and examined many cases as cited in C.J. under the subject of "Damages," and it is the opinion of this court that the verdict of $31,983 is excessive. However, ██ ever, we are not inclined to say that such was rendered under the influence of passion and prejudice, but by a liberal minded jury. The snatching from life the husband and father of the family was tragic and no doubt sympathy was engendered by this early and tragic ending of the life of the deceased.

The fourth and last assignment of error urged is that the court erred in permitting and condoning misconduct of plaintiff's counsel in his argument to the jury. The particular argument referred to by appellant's counsel is couched in the following language:

"Now, they have attempted to come in here at this late time and say the Rust Engineering, they want to hide behind their skirts and say it was the Rust Engineering Company, their employe who was guilty of negligence. He attempts to becloud the minds of this jury and throw dust in the eyes of this jury by these charges he brings in, and argues to you on proximate cause."

Objection was made by counsel for the defendant and counsel requested that the court rule on what he claimed to be improper argument as to whether he has a right to disparage charges given by the court.

"Mr. Huxley: (Counsel for plaintiff) I am not disparaging the charges.

"Court: The argument is not outside of proper bounds and it is overruled.

"Mr. Huxley: He brought these charges and asked this court to give them to you as he has properly given and they are proper charges of the law. We have no objection but he wants to have you believe that on account of those charges that the court has given you before argument that that makes a defense in this law suit. and there is absolutely no defense and he knows it, and he knows they were put in here for one purpose and one purpose alone, and that is to throw dust in the eyes of this jury by trying to hide behind the negligence of the Rust Engineering Company, and to have you folks say somebody else was to blame rather than the Sheet & Tube Company, for one purpose, to argue upon the liability in this case and have you reduce the amount of your verdict because of some possibility that there might be some negligence on the part of the Rust Engineering Company."

Sometimes in their zeal on behalf of clients, counsel overstep the bounds of propriety, not only in argument but on the trial of the cause as well, in propounding leading questions, suggesting thereby the desired answer instead of permitting the witness to tell what occurred or attempting to introduce evidence which counsel offering same is well aware of its incompetency or irrelevancy. Such procedure in the trial of a case is equally reprehensible as improper argument of counsel, and lawyers should not follow such practice. Neither should the court permit same. The special requests referred to in argument by counsel for plaintiff were requests given before argument and reflected correctly the pinciples of law applicable to the issues involved, and neither the court nor attorneys should in any way intimate to the jury which of the parties to the litigation pre-

pared and submitted same. Special requests are not the law of counsel requesting same, but the law of the court, and the jury should consider same to be the law given by the court. This court has examined cases where special requests were given by the court wherein the court stated that counsel for plaintiff has requested that "I give you the following charges before argument." Such is improper. The jury might well assume that it was the law of the attorney, and refuse to consider or follow same. We think it was improper for counsel to call to the attention of the jury as to who prepared these charges. However, counsel further stated that the court properly gave same and they were proper charges. We are unable to conclude that such argument was prejudicially erroneous because of the above statement, as the jury were assured by counsel for plaintiff that the charges were proper and good law. We are not inclined to the view that the defenses asserted in this case were merely dust distributors. They were debatable issues, so much so that the court submitted the entire matter to the jury for its determination. However, we are not convinced that this case should be reversed because of these unfortunate remarks. We are inclined to the view that the jury under the evidence in the case would have found for plaintiff even though these remarks had not been made, as the verdict is not manifestly against the weight of the evidence or contrary to law.

We have already indicated heretofore in this opinion that this verdict is excessive, and it is the opinion of this court that remittitur should be allowed reducing same to $24,000. If plaintiff accepts this amount the judgment of the lower court will be and is affirmed. If not accepted by plaintiff, a new trial will be granted on the ground that same is excessive.

ROBERTS and NICHOLS, JJ, concur.