HARRY GOLDWYN, PLAINTIFF-APPELLANT, v. COAST CITIES COACHES, INC., DEFENDANT-RESPONDENT.

Submitted October 6, 1942—Decided February 2, 1943.

Before Justices BODINE, HEHER and PERSKIE.

For the appellant, *Harry Edelson.*

For the respondent, *William J. O'Hagan.*

The opinion of the court was delivered by

HEHER, J. The action is in tort for negligence. Plaintiff was a member of the New Jersey State Guard. On December 15th, 1941, pursuant to an order of mobilization issued by the Governor, he was ordered to appear at the Asbury Park armory for induction into active service. At the armory he was advised that he had been assigned to guard bridges at Perth Amboy. Two buses of the defendant corporation had been engaged for the transportation of guard members to their respective posts of duty. Plaintiff and thirty-six of his fellow service-men were directed to board one of the buses. He, with two others, took the rear seat. The bus operator was an employee of the defendant corporation. He drove the bus along Route No. 34 in the direction of Perth Amboy. As the vehicle proceeded over the Colts Neck Road intersection, plaintiff and his companions on the rear seat were pitched upward; their heads came in contact with the roof of the bus, and they fell forward to the floor. Plaintiff suffered physical injury.

There was evidence that, before the bus left the armory, the "chief inspector" of the defendant corporation informed the operator that "the bus had been turned over to the New Jersey State Guard," and that he should "take his orders

from Captain Pach," who was in charge of the contingent; that the latter "directed the route to be taken;" and that as the vehicle proceeded along the highway, before the intersection in question was reached, Pach "directed the driver to increase the speed of the bus because he was under the necessity of getting to Perth Amboy with the troop and equipment as soon after dark as possible." And the agreed state of the case discloses that, at the close of the evidence, defendant "moved for a judgment in its favor" upon the grounds that (1) "at the time of the accident," the bus operator "was not an agent or servant, or under the control of the defendant," and (2) "no negligence had been shown;" and that, after argument, the court rendered judgment for defendant.

The first point would seem to be without substance. Even though the bus operator was subject to the direction of the military unit's commanding officer as to time of departure, route, and destination, he was still the servant and agent of the defendant corporation in the general managament and control of the vehicle, and, under the doctrine of *respondeat superior,* the employer was liable for his negligence in the performance of the service. There is no tangible basis in the evidence for a finding that the operator was under the direction and control of the military commander as regards the operation of the vehicle, except in the particulars mentioned. The determinative question is whether the employer had surrendered the exclusive control and direction of the servant, and, on the proofs presented by the state of the case, this inquiry must be answered in the negative. In the management of the bus, the operator was engaged in his master's business. In rendering obedience to such directions as were given him on the journey by the company commander, he was performing the duties of his general employment, and therefore represented the master and not the military officer, or the latter's principal, and so his negligence is imputable to the master under the doctrine of *respondeat superior.* *N. Y., L. E. and W. Railroad Co.* v. *Steinbrenner,* 47 *N. J. L.* 161; *Courtinard* v. *Gray Burial and Cremation Co.,* 98 *Id.* 493. The control of the vehicle remained with the general owner, although the route was determined by the com-

pany commander. Authority to direct the course of a third person's servant does not prevent his remaining the servant of the third person. *New Orleans-Belize Royal Mail, &c., S. S. Co.* v. *United States,* 239 *U. S.* 202; 36 *S. Ct.* 76; 60 *L. Ed.* 227. See, also, *Hooper* v. *Brawner,* 148 *Md.* 417; 129 *Atl. Rep.* 672; 42 *A. L. R.* 1437. In such an inquiry a distinction is to be made "between authoritative direction and control, and mere suggestion as to details or the necessary co-operation, where the work furnished is part of a larger undertaking. * * * The simplest case, and that which was earliest decided, was where horses and a driver were furnished by a liveryman. In such cases the hirer, though he suggests the course of the journey, and, in a certain sense, directs it, still does not become the master of the driver, and responsible for his negligence, unless he specifically directs or brings about the negligent act. Though even in such cases, if the exclusive control over the driver be in the hirer, he may be responsible as master." *Standard Oil Co.* v. *Anderson,* 212 *U. S.* 215; 29 *S. Ct.* 252; 53 *L. Ed.* 480. See, also, *Hussey* v. *Franey,* 205 *Mass.* 413; 91 *N. E. Rep.* 391; *Driscoll* v. *Towle,* 181 *Mass.* 416; 63 *N. E. Rep.* 922. It is not reasonably inferable from the evidence, as it is shown by the state of the case, that the troop commander, by any act of his, assumed the master's status, and thus made the operator's alleged wrongdoing his own.

And even though the evidence revealed by the state of the case were fairly capable of discrepant inferences as to whether, in the rendition of the service which resulted in injury to plaintiff, the bus operator was *pro hac vice* the servant of the third person, we should be obliged to assume, for reasons to be presently stated, that the issue of fact was resolved in defendant's favor.

Whether the operator of the vehicle used the requisite degree of care for the safety of his passengers, *i. e.,* care commensurate with the risk of danger within the realm of reasonable prevision, was a mixed question of law and fact; and, on the record made, we must regard the issue of negligence as having been decided adversely to plaintiff. In determining whether there has been error in the judgment in

matter of law under *R. S.* 1937, 2:27-358, there is a presumption of findings of fact in favor of the prevailing party, even though not expressed in terms. *Smith* v. *Cruse,* 101 *N. J. L.* 82; *Pollack* v. *New Jersey Bell Telephone Co.,* 116 *Id.* 28. The evidence here was not conclusive of a breach of the duty owing to the plaintiff passenger. It was in sharp conflict as to the rate of speed; and reasonable minds might well entertain different views as to whether, under all the circumstances, the bus operator exercised the degree of care commensurate with the risk of danger. Such is the measure of the "high degree" of care which the law places upon the common carrier. *New Jersey Fidelity, &c., Insurance Co.* v. *Lehigh Valley Railroad Co.,* 92 *Id.* 467; *Rhodehouse* v. *Director General,* 95 *Id.* 355; *Spalt* v. *Eaton,* 118 *Id.* 327; affirmed, 119 *Id.* 343; *Weidenmueller* v. *Public Service, &c., Trans. Co.,* 129 *Id.* 279. The operator testified that, as he approached the intersection, he reduced the speed of the vehicle to "about twenty-five miles per hour;" and it cannot be said that, in the circumstances, this established negligence as a matter of law. While there was evidence of a greater rate of speed, the resolution of the issue was the province of the trier of the facts. The road construction may have been deemed the primary factor. It is fundamental in the District Court Act that findings of fact on conflicting evidence, or on uncontroverted evidence reasonably susceptible of divergent inferences, are conclusive on error. *R. S.* 1937, 2:32-202.

Judgment affirmed, with costs.