### HAW et al. v. LIBERTY MUT. INS. CO., and to Use of GIACOMO.

#### No. 10100.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 17, 1949.

Decided Jan. 16, 1950.

Mr. John H. Burnett, Washington, D. C. with whom Mr. Charles W. Arth, Washington, D. C., was on the brief, for appellants.

Mr. Edward Bennett Williams, Washington, D. C., with whom Mr. Nicholas J. Chase, Washington, D. C., was on the brief, for appellee.

Before CLARK, WASHINGTON and BAZELON, Circuit Judges.

WASHINGTON, Circuit Judge.

Joseph P. Giacomo was a foreman employed by Mace Properties, Inc., on an extensive building job being conducted by that company on its own land in Arlington, Virginia. The Haw Company, which was in the contracting business, and had a long-standing business relationship with Mace, had agreed with Mace to supply certain equipment, including bulldozers with operators, and to do the excavation work. While the exact nature of the agreement is not clear, it appears that the work here in question was paid for at a stipulated sum per man-hour (of equipment use). In any event the work was for a profit. Haw had a supervisor on the job who generally gave orders to the men Haw supplied. Haw paid its employees and alone had the right to discharge them. Mace exercised a measure of supervisory con-

trol over them, as it told them where to work on the job and when, as well as what job was to be done.

On June 19, 1945, a lumber truck delivering supplies to one of Mace's sub-contractors became stuck in the mud on the construction premises. A bulldozer owned by Haw and operated by one of its employees, Bowers, was to help dislodge the truck—a task within the scope of what Haw had agreed to do. Giacomo, with another person, was holding a board against the rear of the truck to prevent direct contact between the truck and the bulldozer blade. When the blade hit the board, Giacomo's hand was caught and injured.

Mace's insurer, the appellee, Liberty Mutual Insurance Company, brought this action against appellant Haw. It sued as subrogee of Giacomo, and for his use. Liberty Mutual alleged that Giacomo's injury was due to the negligence of Haw's employee; that Liberty had paid Giacomo compensation under the Virginia Workmen's Compensation Act, Code 1942, § 1887 (1) et seq.; and that under that Act it was entitled to bring this suit. Haw denied negligence or that Bowers was acting as its agent. Defendant further alleged that Giacomo was contributorily negligent; that Bowers was for the time being a servant of Mace and a fellow servant of Giacomo; and that, accordingly, Haw was not liable for Bowers' negligence, if negligence there was. In addition, among other matters, Haw denied that Liberty had paid anything to Giacomo.

Before the trial it was stipulated, in substance, that if the jury found for the plaintiff, it would render a single verdict, not separating Liberty's and Giacomo's claims. A verdict of $17,500 was rendered,

and the trial court, denying appellant's motions for a judgment n. o. v. or for a new trial, entered judgment for the plaintiff. The Haw Company now appeals.

This case does not involve a question of liability to a member of the general public, having no connection with the construction work. Here, a worker is alleged to have been injured through the fault of another worker, hired and paid by a different employer, but engaged in the same general undertaking. In such a situation, where the employer hiring the allegedly derelict worker exercises a sharply reduced degree of control over the latter's actions, by reason of the requirements of the undertaking itself, and where workmen's compensation is available, the question is presented whether that employer should be made liable to the injured man in a suit for damages.

This problem has been considered in a large number of cases closely similar in their facts to the present. In these cases, it has frequently been said that "a servant may be loaned by the master to a third person, to perform services for the third person, and to an extent the servant may assume a relationship to the borrowing master that overshadows and in many respects delimits the relationship to the lending master."[1] This has in numerous instances been carried to the point of relieving the original master of responsibility for the acts of the loaned servant, in spite of the usual doctrine of *respondeat superior*.[2] In determining whether the original master-servant relationship has thus been severed or modified, the decisions appear to have drawn no distinction between a case where a member of the public was injured, and a situation, such as the present, where the injury was to another employee on the

1. Wylie-Stewart Machinery Co. v. Thomas, 1943, 192 Okl. 505, 137 P.2d 556, 558; see, e. g., Standard Oil Co. v. Anderson, 1909, 212 U.S. 215, 29 S.Ct. 25, 53 L.Ed. 480; Merlo v. Public Service Co., 1942, 381 Ill. 300, 45 N.E.2d 665; Charles v. Barrett, 1922, 233 N.Y. 127, 135 N.E. 199. There are, of course, a very large number of cases in this field. We cite here and in the footnotes immediately following only those which appear to

have particular relevance to the precise problem here presented. See, generally, Restatement, Agency, § 227; Smith, Scope of the Business: The Borrowed Servant Problem, 38 Mich.L.Rev. 1222 (1940).

2. For example, Wylie-Stewart Machinery Co. v. Thomas, supra; Mansfield v. Andrew Murphy & Con, 1941, 139 Neb. 793, 298 N.W. 749.

job. The same criteria have been considered determinative of liability or non-liability in either instance.[3]

In dealing with this issue, a factor frequently treated as decisive is the locus of the power to control and direct the men in the performance of their work: power is said to carry liability with it.[4] Evidence of control has been found in such elements as the payment of wages, the right to discharge, and the right to direct what work shall be done as well as the specific manner in which it shall be accomplished.[5] But where control is divided, there has not been complete agreement as to which elements of control are dominant, and as to the total amount of control prerequisite to the fastening of liability.[6] Another inquiry is—whose work is the employee doing, whose business is he furthering?[7] Here also the decisions have not always reached consistent results, for often the work directly advances the interests of both the "borrowing" and the "lending" employer.[8] Finally, some courts have taken into consideration both the business interests of the employers involved in the work and the division of the elements of control between them.[9] Apparently implicit in this approach is the feeling that the problem cannot be resolved by purely mechanical tests, and that the factors both of risk prevention and of risk distribution are material considerations.[10] And perhaps also present is the conclusion that often the elements that normally call for *respondeat superior* liability are so divided that either one of the employers might justifiably be held responsible; that it is not unreasonable for an employer who has both a business interest in the work and some control over its execution to bear the risk of the employee's negligence.[11]

■ In this case, both parties regarded

---

3. Compare, for example, Delisa v. Arthur F. Schmidt, Inc., 1941, 285 N.Y. 314, 34 N.E.2d 336; Charles v. Barrett, supra; Lowell v. Harris, 1938, 24 Cal.App.2d 70, 74 P.2d 551; Lee Moor Contracting Co. v. Blanton, 1937, 49 Ariz. 130, 65 P.2d 35; City of Tulsa v. Randall, 1935, 174 Okl. 630, 52 P.2d 33, with Standard Oil Co. v. Anderson, supra; Goldwyn v. Coast Cities Coaches, 1943, 129 N.J.L. 501, 30 A.2d 295; Manchester v. Youngstown Sheet & Tube Co., Ohio App. 1937, 46 N.E.2d 780; Merlo v. Public Service Co., supra; Mansfield v. Andrew Murphy & Son, supra; Wylie-Stewart Machinery Co. v. Thomas, supra; Devaney v. Lawler Corporation, 1936, 101 Mont. 579, 56 P.2d 746; Van Deusen v. Ruhtz-Pike Engineering & Const. Corp., 1933, 238 App.Div. 178, 264 N.Y.S. 395.

4. For example, Merlo v. Public Service Co., supra; Goldwyn v. Coast Cities Coaches, supra; Mansfield v. Andrew Murphy & Son, supra; Manchester v. Youngstown Sheet & Tube Co., supra; Ramsey v. New York Cent. R. Co., 1935, 269 N.Y. 219, 199 N.E. 65, 102 A.L.R. 511; Bartolomeo v. Charles Bennett Contracting Co., 1927, 245 N.Y. 66, 156 N.E. 98.

5. See, e. g., Standard Oil Co. v. Anderson, supra; Merlo v. Public Service Co., supra; Lowell v. Harris, supra; Devaney v. Lawler Corporation, supra.

6. Compare, e. g., Merlo v. Public Service Co., supra; Lowell v. Harris, supra;

Ramsey v. New York Cent. R. Co., supra, with Lee Moor Contracting Co. v. Blanton, supra; Wylie-Stewart Machinery Co. v. Thomas, supra; Mansfield v. Andrew Murphy & Son. supra.

7. E. g., Devaney v. Lawler Corporation, supra; Delisa v. Arthur F. Schmidt, Inc., supra; Gaston v. Sharpe, 1943, 179 Tenn. 609, 168 S.W.2d 784.

8. Compare, e. g., Devaney v. Lawler Corporation, supra; Gaston v. Sharpe, supra, with Anderson v. Abramson, 1944, 234 Iowa 792, 13 N.W.2d 315; Delisa v. Arthur F. Schmidt, Inc., supra.

9. E. g., Denton v. Yazoo & M. V. R. Co., 1932, 284 U.S. 305, 52 S.Ct. 141, 76 L. Ed. 310; Standard Oil Co. v. Anderson, supra; Baltimore Transit Co. v. State, 1945, 184 Md. 250, 40 A.2d 678; Anderson v. Abramson, supra; Devaney v. Lawler Corporation, supra; Delisa v. Arthur F. Schmidt, Inc., supra.

10. E. g., compare Denton v. Yazoo & M. V. R. Co., supra, with Standard Oil Co. v. Anderson, supra. See also Baltimore Transit Co. v. State, supra; Devaney v. Lawler Corporation, supra; Lee Moor Contracting Co. v. Blanton, supra. See, further, Douglas, Vicarious Liability and the Administration of Risk, 38 Yale L. J. 584, 720 (1929).

11. See Anderson v. Abramson, supra; Delisa v. Arthur F. Schmidt, Inc., supra, and, generally, Restatement, Agency, § 226.

Virginia law as governing. This seems correct, as the contacts for choice of law purposes were overwhelmingly in Virginia. We have found no Virginia decision directly in point on the facts presented. In cases generally analogous to the present, the Virginia courts appear to have treated the locus of control as decisive, although giving weight to factors relevant to the question of whose work was involved.[12] The trial court's charge to the jury was in similar terms: the principal emphasis was on control, and, in addition, reference was made to business interest (the "whose work" test). We believe that the charge was adequate, was not prejudicial to the defendant, and was in accord with Virginia law. There was ample evidence to support the jury's verdict. Bowers was selected and paid by Haw and was ultimately responsible to Haw. The latter was shown to have had a substantial business interest in the work, and a large amount of control.

In reaching this conclusion, we have not ignored the strong arguments which may be advanced in support of appellant's position. Giacomo was intimately familiar with the construction work and the construction premises. He was an active participant in the task of dislodging the truck, along with the operator of the bulldozer. He was entitled to workmen's compensation from Mace. It is arguable that the accident which happened to him was simply one of the industrial risks which workmen's compensation was designed to cover.[13] On the other hand, full redress is not always produced by the statutory compensation formula. And apart from recompense to the employee, the compensation insurer has an interest in any possible recovery which may be obtained against a third party responsible for the industrial accident. We do not think that the fact of the instant case require a departure from the ordinary application of the rules of *respondeat superior*. We find affirmative support for this result in the Virginia compensation act, which specifically provides for full recovery from a third party tort-feasor, for the benefit of both the injured employee and the compensation insurer.[14]

Appellant relies on Western Marine & Salvage Co. v. Ball, 1930, 59 App.D.C. 208, 37 F.2d 1004, decided by this court. In that case Western sold some scrap metal located in a shipyard to one Simon, and as part of the deal rented to him at cost a crane with operator, to be used in breaking up the metal. Ball, one of Simon's employees, was injured through the operator's negligence, and sued Western. It was held that the operator was Simon's employee *pro hac vice* although Western hired him, paid his wages, and had the right to fire him. Western thus was held not liable. That case is distinguishable on many grounds. First, Western had no real control over the crane operator's work, as Simon's men were the sole supervisors of the job, including the operation of the crane. Second, the crane and operator were lent at cost, as merely ancillary to the major part of the contract, the sale, and the work for which the crane was used was that of Simon. In the case at bar the charge for the men and equipment included a profit, their presence was an integral part of the contract, and their work was Haw's responsibility. Third, in the Western case the contract itself recited that the breaking and loading of the metal were to be at the cost and expense of the vendee, and that the obligations of Western would be complied with upon delivery of the scrap to the place in the shipyard where the crane was to be used. Finally, to speak in technical terms, the whole framework

12. See, e. g., Nolde Bros. v. Chalkley, 1945, 184 Va. 553, 35 S.E.2d 827, 833; Craig v. Doyle, 1942, 179 Va. 526, 19 S.E. 2d 675, 677; Texas Co. v. Zeigler, 1941, 177 Va. 557, 14 S.E.2d 704, 706; Hann v. Times-Dispatch Pub. Co., 1946, 166 Va. 102, 184 S.E. 183, 184–185; Epperson v. De Jarnette, 1935, 164 Va. 482, 180 S.E. 412.

13. Cf. Feitig v. Chalkley, 1946, 185 Va. 96, 38 S.E.2d 73 (suit between fellow servants); Sykes v. Stone & Webster Engineering Corp., 1947, 186 Va. 116, 41 S.E. 469 (suit between subcontractor's employee and general contractor).

14. Va.Code § 1887(12) (1942 ed.), now found in § 65-38 and § 65-108 (1950 ed.).

of the contract, in its setting, indicated that Western was not an independent contractor as to the use of the crane and operator, whereas here the relationship of independent contractor is implicit in the situation. It would have been unreasonable to hold Western responsible for the negligence of an employee whose work it had no business interest in and did not supervise.

■■■ Appellant also argues as error, first, that there was no evidence of negligence and, second, that contributory negligence was conclusively proved. The circumstances of the accident are disputed. There is testimony both to the effect that the operator of the bulldozer permitted it to swerve, and also that it went straight; that the terrain was smooth and that it was rough; that Giacomo's hand was well away from the side of the truck and, on the contrary, that he held the board with his hand directly behind the truck. The jury chose to believe the plaintiff. That plaintiff's evidence made out a case for the jury seems clear. It has been held consistently that when a moving vehicle strikes a stationary object which is not out of its proper place, a prima facie case of negligence is established.[15] While such cases generally have involved the unintentional striking of a parked vehicle, the rule there established seems applicable here. The bulldozer was meant to move the truck, not to hit Giacomo's hand. As there is sufficient evidence to support the verdict, it is not the province of this court to interfere.[16]

■■■ The appellant also claims that under section 1887(12) of the Virginia Code (the workmen's compensation law)[17] the judgment is void as the court did not determine the amount due Liberty after the jury rendered a single verdict. Appellant relies on Virginia Electric & Power Co. v. Mitchell.[18] That case, however, was based upon a prior Virginia statute which barred from other recovery the injured party who had accepted workmen's compensation benefits, and permitted suit against the tort-feasor only by the party who had paid the compensation, with judgment only to the extent of such payments. Thus, determination of compensation paid under that Act was necessary as it delimited the amount of recovery.[19] Full recovery against the tort-feasor is permitted under present law, and while determination of compensation benefits paid is still provided for, it apparently is mandatory only when requested by the person who paid the compensation, being designed for his

---

15. E. g., Bonbrest v. Lewis, D.C.Mun.App. 1947, 54 A.2d 751; Schwartzbach v. Thompson, D.C.Mun.App. 1943, 33 A. 2d 624; see note 151 A.L.R. 876 (1944).

16. Appellant objects to the trial court's charge in another respect. After stating that it was necessary that Bowers' negligence be a proximate cause of plaintiff's injuries, the court proceeded to define the word "proximate" by saying "in this case, insofar as the jury is concerned, the word means 'probable.'" He then repeated the charge in these terms.

Although the court's definition of "proximate" appears incorrect, we believe that the error was not prejudicial when considered in the light of the evidence and remainder of the charge. There was no real dispute as to whether, if Bowers was negligent, such negligence caused the injury—subject, of course, to the possibility that Giacomo was contributorily negligent. From the facts of the case causation could not be in issue so long as Giacomo was not contributorily negligent. As the charge in the latter regard was adequate, we do not think that the instruction as to proximate cause was reversible error. Cf. Chicago, Milwaukee & St. P. Railroad v. Ross, 112 U.S. 377, 395, 5 S.Ct. 184, 28 L.Ed. 787; Dunagan v. Appalachian Power Co., 4 Cir., 33 F.2d 876, 68 A.L. R. 1393.

17. 1942 ed., now found in § 65-39 (1950 ed.).

18. 1932, 159 Va. 855, 164 S.E. 800, rehearing 1933, 167 S.E. 424.

19. While the case of Virginia Electric & Power Co. v. Mitchell was on appeal, the statute was amended to permit full recovery against the tort-feasor, and the court indicated its holding would not be applicable to cases arising under the new act, 1933, 167 S.E. 424, 425.

benefit.[20] The appellant here has no interest in the division of the amount of the judgment between Liberty and Giacomo.

■ It is also argued that Liberty did not prove it paid Giacomo anything and thus had no standing to sue as subrogee or otherwise. The trial court treated this matter as if counsel for both parties had agreed at the trial that such proof was not necessary, and the record supports this conclusion.

Upon examination of the record we find no reversible error.

Affirmed.

20. While no Virginia decision in point has been found, the language of the statute itself strongly indicates this result. The statute reads:

"In any such action by such employee * * * or other person * * * the court shall, on petition or motion of the employer at any time prior to verdict, ascertain the amount of expenses * * incurred by the employer under the provisions of this act, and in event of judgment against such person other than the employer, the court shall in its order require that the judgment debtor pay such expenses of the employer so ascertained by the court out of the amount of the judgment, so far as sufficient, and the balance, if any, to the judgment creditor." Va.Code § 1887(12) (1942 ed.), now found in § 65-39 (1950 ed.).

The term "employer" in this context apparently includes the insurance carrier, as provision is made in this section for suit by either the employer or the insurer, depending upon who paid the compensation benefits. § 1887(12) (1942 ed.), now found in § 65-38 and § 65-108 (1950 ed.).