**Walter CIEJEK and Anniebelle Ciejek, Appellants,**

**v.**

**CRANE SERVICE COMPANY, Inc., Appellee.**

**No. 18416.**

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 10, 1964.

Decided June 28, 1965.

Company for the furnishing on the site of certain services incidental to the bridge construction. The leasing arrangement was to continue as long as the contractor thought necessary, and did continue approximately two weeks. During this period an accident occurred, allegedly caused by the negligence of the crane operator, resulting in serious injuries to appellant for which he and his wife instituted the present action. The cause was tried to a jury on the issue of liability. At the conclusion of the presentation of all the evidence, the trial judge directed a verdict for appellee. His stated reason for doing so was that the principle of *respondeat superior* could not operate as to appellee for the reason that its employee—the crane operator— was not functioning as its servant at the time of the accident but, rather, as the servant of the general contractor. Thus, even if the crane operator be deemed to have been negligent, it was ruled that appellee could not be held to answer for that neglect.

The only issue before us is the propriety of that ruling. We think the direction of a verdict to have been wrong and we reverse.

I

Appellee's business is primarily the leasing of cranes, manned by appellee's personnel, usually on a short-term basis, to contractors like Ward who utilize the cranes for construction purposes. The normal procedure, which appears to have been generally followed in this case, consists of appellee's informing the crane operator of the name of the contractor and the location of the site, and sometimes describing in general terms the nature of the work to be done. Once the crane operator reaches the site, he is normally under the direction of the contractor's supervisor as to which particular work is to be accomplished and how it is to be done.[1] The wages of the operator are paid by the crane company,

Mr. Philip J. Lesser, Washington, D. C., with whom Mr. I. Irwin Bolotin, Washington, D. C., was on the brief, for appellants.

Mr. Frank F. Roberson, Washington, D. C., with whom Mr. James A. Belson, Washington, D. C., was on the brief, for appellee.

Before FAHY, WASHINGTON and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge.

Appellant Walter Ciejek was employed as a carpenter by Heman S. Ward Company, a general contractor engaged in the construction of a bridge. Ward leased a crane, accompanied by an operator and an oiler, from appellee Crane Service

---

1. The testimony in this case, offered on behalf of appellant, was that, on the first day of the leasing period, appellee's vice president told the operator "to go to the job and see Heman Ward's man [the general superintendent] and to do whatever he told him to do. That is his job, to make the contractor happy."

which retains general authority to hire and fire.

Appellant's injury occurred in this way. The contractor's superintendent decided to utilize the crane to move a number of long pieces of wood over a high wall to be deposited on the other side below a scaffold where they would be convenient to the contractor's carpenters. This operation involved some technical difficulties, because the pieces of wood (known as "walers") were longer than the space through which they had to pass in order to reach their destination under the scaffold. The superintendent devised a plan which he realized involved some danger, but which would accomplish the desired result. The superintendent's scheme, conceived by himself alone and without apparent consultation with the crane operator, was to lift the walers over the wall by means of the crane, and to bring into contact one end of the load with a thin scaffold support board. The descending load would thus be tipped diagonally, so that it might pass through the small space to its destination below the scaffold. The superintendent apparently realized that the scaffold board might not be able to stand the strain, for he ordered all the carpenters off the scaffold, including appellant Ciejek. These fears were justified, because the support board broke, and fell on Ciejek, who for some reason had not gotten into the clear.

During the entire operation, the crane operator was stationed on the other side of the high wall, and could not see any of the activities which resulted in the accident. Therefore, the contractor's superintendent stood on the wall and directed the crane's operation by means of hand and voice signals. The superintendent testified that the crane operator followed the signals correctly. In fact, the operator did not even learn of the accident until much later in the day.

The trial court ruled on these facts that the operator was, at the time of the accident, performing the general contractor's work, and not that of appellee. It purported to find the answer to the question of whose work was being done in the circumstances relating to the control being exerted by the contractor's superintendent over the crane operator. It concluded that, for purposes of the doctrine of *respondeat superior*, the crane operator was the general contractor's servant because he was doing the general contractor's work.

## II

We hasten to say that, in approaching the problem as it did, the trial court was acting within the confines of a long-standing and wholly respectable tradition. In considering the so-called borrowed-servant defense to a claim of vicarious liability, courts have usually attempted to employ one of two tests, or a combination of both. The question has been either (1) which employer was exercising at the time in question the more substantial degree of control, or (2) whose work was the employee doing at the time the accident occurred.[2] As "tests," neither question has elicited particularly responsive or satisfactory answers. Quite obviously, control is always exercised in some measure by both employers. The general employer continues to pay wages and to retain authority over the general elements of employment, *i. e.* to hire, to fire, to assign to other jobs, and so on. The special or temporary employer may direct what work is to be done, and how. Merely to debit and credit elements of control on a sort of balance sheet and on that basis to declare who is in reality *the employer* is to reach a mechanical result in a context where the more meaningful considerations involved are of greater complexity. On the other hand, the second test—whose business is being furthered—assures no more adequate answers, and, indeed, frequently seems, as here, to be the conclusion drawn from the "control" inquiry. In this case it is hardly irrational to say

2. See Haw v. Liberty Mut. Ins. Co., 86 U.S.App.D.C. 86, 180 F.2d 18 (1950), for a detailed analysis of this body of law and a comprehensive collection of the cases. See also Smith, Scope of the Business: The Borrowed Servant Problem, 38 Mich.L.Rev. 1222 (1940).

that when the accident occurred the crane operator was doing the contractor's work. Without such cranes, the desired construction could not have been accomplished. Yet, at the very same moment, the crane operator was furthering his own employer's sole business, which consists of renting, for profit, cranes and operators to construction contractors. The shortcomings of either test, either alone or in combination, become at once apparent.

In our view, a great deal of the confusion in the applicant of the borrowed-servant doctrine has flowed from a failure to differentiate adequately the *respondeat superior* issue from the one of whether the employee in question has in fact been guilty of culpable neglect. It appears likely that this is at the root of the problem presented by this appeal. The trial court, in directing a verdict in advance of jury consideration, addressed itself exclusively and in precise terms to the one issue, namely, whether, as a matter of law, appellee had any amenability whatsoever under *respondeat superior* for the conduct of the crane operator. In ruling as it did on this issue, we think the court erred in its reading of the controlling authorities in this jurisdiction. Poole v. Clagett, 90 U.S.App.D.C. 412, 196 F.2d 775 (1952); Haw v. Liberty Mut. Ins. Co., 86 U.S.App.D.C. 86, 180 F.2d 18 (1950). See Standard Oil Co., v. Anderson, 212 U.S. 215, 29 S.Ct. 252,

53 L.Ed. 480 (1909); and compare Western Marine & Salvage Co. v. Ball, 59 App.D.C. 208, 37 F.2d 1004, cert. denied, 281 U.S. 749, 50 S.Ct. 353, 74 L.Ed. 1161 (1930). It is possible, of course, to discern some differences between the circumstances involved in the *Haw* and *Poole* cases, on the one hand, and those presented on the record before us, but we do not think these are of such consequence as to justify the direction of a verdict here in the face of the reversal of a similar action in *Poole* and our refusal to set aside a jury verdict in *Haw*.[3] It is probably accurate to say that one who seeks to suspend, for purposes of *respondeat superior*, what is concededly a general employment of A by B, and to convert A into a special and temporary employee of C, must make an especially strong showing. *Western Salvage* was, in this court, such a case, but the facts there, with special reference to the limited interest of the general employer in the enterprise and the terms and conditions upon which its employee was made available, are significantly different from what is shown by the record before us. See also Denton v. Yazoo & M. V. R.R., 284 U.S. 305, 52 S.Ct. 141, 76 L.Ed. 517 (1932).

Little, if any, light is shed on the case before us by the inquiry into whose work was being performed. A general contractor who, in order to accomplish his undertaking, needs the services of a crane and

---

3. *Haw* is sought to be distinguished by appellee on the ground that there the leasing company had supervisors of its own on the construction site. But it appears that these were there primarily to keep track of the large amount of equipment supplied to the contractor; and it does not appear who, if anyone, was directing the crane operator at the time of the accident. In that case a jury apparently concluded that the crane operator had been negligent. Of *Poole* it is said that no one was in fact directing the crane operator at the time of the accident, and that that accident was solely attributable to the carelessness of the operator. In the view we take of this problem, these assumptions negate any holding that the operator's employer could not be liable as a matter of law, and

present, at the least, a jury issue as to whether the operator was actually guilty of culpable carelessness. What this court did in *Poole* was to reverse the direction of a verdict founded, as here, upon a ruling that, assuming the operator's negligence, his employer had no responsibility as a matter of law. In this equipment-leasing situation, we are hard put to say why, where an accident is solely attributable to failures by the operator in the handling of his machine, his employer— the equipment lessor—should not normally be answerable. If the accident was due to defects in the machine itself, it would hardly be claimed that the lessor was not liable simply because it was being operated at the time under directions given by a representative of the general contractor.

operator is obviously going to employ them in his own work. By the same token, a person who makes his living by supplying just such needs may be said to be employing the crane and operator in *his* own work. A single activity is, thus, simultaneously furthering two separate interests; and, in terms of interest alone, there is furnished little or no rational basis for shifting master-servant relationships for purposes of *respondeat superior*. The concept of relative degrees of direction or control is, as we have seen and as happened here, frequently used, not as an alternative standard but as an index to deciding whose work is being done. Since the answer to the latter question is, at least in a case like this, inevitably ambivalent, the control inquiry for this purpose is not very meaningful.

■ A purpose which ventilation of the facts with respect to control might serve with some utility is to illuminate the question of who it was that was really responsible for causing the accident. And this, obviously, touches very closely, certainly in the light of the evidence adduced in this case, upon the question of whether the crane operator was in fact guilty of any neglect for which his employer—appellee—should be made to account. A crane operator working under the closest possible direction and control of the general contractor has still a duty, in carrying out those directions, to operate his crane with an appropriate degree of care and skill; and his own employer will presumably be liable for any lapses in this regard which cause injuries. But the bare fact that the operation of the crane resulted in an injury would not at all events establish the culpable neglect of the crane operator if the injury was caused, not by any lapse or lack of care by the crane operator in the operation of his crane but rather because the particular utilization of the crane ordered and directed by the general employer was either foolhardy in its original conception or carelessly supervised in its execution.

■ Our reversal is, thus, directed solely against the trial court's ruling that appellee had no responsibility as a matter of law for the conduct of its employee. On this record we think there was no substantial issue as to appellee's answerability *if* its operator was guilty of neglect. Contrarily, we think there was a very substantial question indeed as to whether there was such neglect; but that is a question which has hitherto been unresolved in this proceeding and one which would appear to have been appropriate for submission to the jury. We reverse and remand for further proceedings not inconsistent herewith.

It is so ordered.

WASHINGTON, Circuit Judge (concurring in the result).

The majority opinion criticizes the approach taken by this court in the past to "borrowed servant" problems. In Haw v. Liberty Mutual Insurance Co., 86 U.S. App.D.C. 86, 180 F.2d 18 (1950), the court reviewed the case law in the area and affirmed a jury verdict for plaintiff on a charge directing the jury to consider the locus of control and whose work was being done. This approach was reaffirmed in Poole v. Clagett, 90 U.S.App. D.C. 412, 196 F.2d 775 (1952). Without expressly abandoning those decisions, indeed citing them as "controlling authorities," the majority states that the questions traditionally asked in assessing liability have not "elicited particularly responsive or satisfactory answers"; and the answer to the question of whose work is being done is "inevitably ambivalent." In what seems to be an effort to avoid the "shortcomings" of the traditional tests, the majority grafts on a new presumption. While I agree that the traditional tests lack logical precision, they have not proved unworkable and I am not willing to abandon them or complicate them further unless the change appears to be a genuine advance. In my view the majority's opinion will only increase the confusion in this already troubled area.[1]

---

1. I see no justification for the majority's assertion that "a great deal of the con-

fusion" in the borrowed servant problem arises from confusion of the *respondeat*

The majority establishes in the most general terms a presumption that a general employer will be held liable for the negligence of a borrowed servant unless there is "an especially strong showing." The opinion states:

> "It is probably accurate to say that one who seeks to suspend, for purposes of *respondeat superior*, what is concededly a general employment of A by B, and to convert A into a special and temporary employee of C, must make an especially strong showing."

The form of this statement is perhaps misleading in that it suggests that the statement describes the existing state of the law. But the majority cites no cases in which such a presumption has been stated or applied.[2] The appellee did not suggest the existence of such a presumption in its brief.[3]

The majority never states why it adopted this presumption rather than the opposite one. It seems equally logical to say that the special employer will "normally be answerable," absent "an especially strong showing." If there are policy reasons for the majority's choice, they are not stated in the opinion.[4]

Furthermore, while the majority states that there must be "an especially strong showing" to hold the special employer liable, it does not state what must be shown or what elements make one showing stronger than another. Presumptions do not decide cases. The opinion seems to fall back on the control and "whose work is being done" criteria; hence, it is hard to see this opinion as an advance beyond *Haw* and *Poole*.

One additional departure from the *Haw* and *Poole* cases should be noted. The majority seems to concede that those cases are indistinguishable from the instant case on their facts. In those cases our opinions upheld the practice of submitting to the jury the question of the

*superior* issue with the question of whether or not the borrowed servant was negligent at all. This problem causes very little confusion, as our *Haw* and *Poole* decisions indicate. The majority acknowledges that the trial judge was not confused by this problem. I see no reason to consider that issue in this case in its present posture.

2. This presumption is quite different from the inference that the original employment relationship continues noted in RESTATEMENT OF AGENCY 2d, § 227, Comment b. This inference exists only "in the absence of evidence to the contrary," placing the burden of going forward with the evidence on the party challenging the liability of the general employer. It does not require a higher degree of proof. See Falk v. Unger, 33 N.J.Super. 589, 111 A. 2d 283 (1955).

3. Footnote 3 in the majority opinion reasserts the presumption of the general employer's liability:

"In this equipment-leasing situation, we are hard put to say why, where an accident is soley attributable to failures by the operator in the handling of his machine, his employer—the equipment lessor—should not normally be answerable."

In this statement the majority drops any pretense of relying on precedent; the footnote limits the application of the presumption to equipment-leasing situations, where the operator's negligence leads to the injury.

4. The only suggestion of a reason for the majority's choice of one presumption rather than the other is an analogy contained in footnote 3 of the opinion:

"If the accident was due to defects in the machine itself, it would hardly be claimed that the lessor was not liable simply because it was being operated at the time under directions given by a representative of the general contractor."

But the analogy does not bear analysis. If the machine's defects caused the accident, the lessor would be held liable, if at all, *for its own negligence*. See Socash v. Addison Crane Co., 120 U.S.App. D.C. 308, 346 F.2d 420. (1965). *Respondeat superior* rests on a different theory: "Fault on the part of the employer has never been required as a condition of his liability." GREGORY & KALVEN, CASES ON TORTS 704 (1959). Where the machine's defect causes an injury, the issue is whether negligence led to the defect. Where a borrowed servant's negligence causes an injury, the issue is which employer should the negligence be imputed to. The common modern explanation of the doctrine is that "the burden of accidents of a business enterprise should

general employer's liability under *respondeat superior* as well as the question of the borrowed servant's negligence. The majority opinion, however, states that the appellee is liable as a matter of law on this record if the employee is found by the jury to be negligent. I see no justification for treating this case differently from *Haw* and *Poole* and taking the question from the jury. Presumably, if additional facts are adduced in a new trial, the judge will not be bound by the majority opinion to decide this question as a matter of law.

In my view the trial judge erred in directing a verdict for the appellee. The question of appellee's liability should have been submitted to the jury, both as to the borrowed servant's negligence and the liability of the appellee under *respondeat superior*. Until a more satisfactory solution can be evolved, I see no reason to abandon our previous opinions.

be reflected in the costs of the enterprise." *Ibid.* See generally Calabresi, The Decision for Accidents: An Approach to Non-fault Allocation of Costs, 78 HARV. L.REV. 713, 725–742 (1965). The opinion disregards this justification in relying on the specious analogy of the defective leased machine.