## WALKER v. DANTE.
### No. 5465.

Court of Appeals of the District of Columbia.
Argued April 8, 1932.
Decided May 9, 1932.

Rossa F. Downing and Joseph J. Malloy, both of Washington, D. C., for appellant.

Edmund L. Jones, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appeal from a judgment in the Supreme Court of the District on a directed verdict for the defendant at the close of plaintiff's evidence. The suit was to recover damages for personal injuries sustained on November 18, 1926, as the result of tripping and falling over a step or rise about one and one-half inches high, situated between show windows forming a public corridor or passageway to two stores on premises of appellee at 711 and 713 Thirteenth Street N. W.

At the trial it was admitted that a permit "to construct show windows and erect partitions upon premises 711–713 13th Street N. W.," was issued on September 21, 1926; and that William J. Dante, husband of the defendant, "was her duly authorized agent for the purpose of these repairs, alterations, and changes and for the management and control of the building for all purposes." Accompanying the permit was a plan or sketch of the proposed alterations, which by agreement of counsel was admitted in evidence for the purpose of demonstrating to the jury "what the conditions were in regard to the entrances to 711–713 13th Street, Northwest." Regarding those conditions, the record is as follows: "During the course of the trial by and with the consent of the counsel for the defendant this plat was shown to the jury and explained by counsel for the plaintiff. The location of the step on the sketch was pointed out to the jury. In this explanation it was stated that the step over which it is claimed plaintiff tripped and fell was located three feet, two inches inside a passageway formed by show windows extending from the public sidewalk to the entrances to 711–713 13th Street, Northwest, a distance of approximately ten feet from sidewalk to the store entrances. It was also agreed that before the remodeling, the step in question was at the building line as it is at the present time, and the whole first floor was occupied by the Sanitary Grocery Company as one store, the threshold or entrance to the store being at this step. In the remodeling a partition was run backward dividing the floor into two approximately equal sections for stores, and entrances to these stores, 711 to the right and 713 to the left, were moved back from the step and building line a distance of about six feet and a corridor or hallway was formed by show windows added to the building, said corridor then extending three feet, two inches from the step to the pavement and six feet backward from the step to the entrances." The plat also discloses that the floor of the corridor from the sidewalk to the step was panelled, thereby presenting a different appearance from the adjoining sidewalk.

Plaintiff testified that on the day of the accident she was walking down Thirteenth street and saw some brass objects in the window of the International Brass Shop at 713 Thirteenth street. She started to go in, "caught her foot on a ledge, about an inch or an inch and a half, and fell the whole length of her body face down—glasses went one way, umbrella went the other, and she hit her head on the door jamb of 713. There are two doorways there, double doorways." On cross-examination the witness stated that she "started up the walk between these two glass show windows, and she was still looking at the objects. She just simply made an effort to walk in the door. She didn't look for this step at all." In answer to the question: "Did you look down where you were walking? Did you pay any attention to where you were walking at all?" witness replied: "Of course I did. I turned around and just like anyone would walk along the place, thinking it just a plain sidewalk." In answer to the further question: "Did you look down to see if this walkway, this hallway you might call it, was on the same level; did you pay any attention to it at all?" witness answered: "It was so slight." Again she was asked: "You just didn't look; you just walked in there, tripped and fell.

That is right, isn't it? Is that right?" She replied: "As close as I could say."

It is settled law that an owner who retains control of a portion of premises or leases different parts of premises to different tenants with a common use of steps or landings, passageways, and the like, is under a duty to use reasonable care to maintain such places and appurtenances in a reasonably safe condition for the purposes intended. Security Savings & Commercial Bank v. Sullivan, 49 App. D. C. 119, 261 F. 461; Wardman v. Hanlon, 52 App. D. C. 14, 280 F. 988, 26 A. L. R. 1249; Altemus v. Talmadge, —— App. D. C. ——, 58 F.(2d) 874, decided April 18, 1932; Bloomer v. Snellenburg, 221 Pa. 25, 69 A. 1124, 21 L. R. A. (N. S.) 464.

In the present case the defendant retained exclusive control of the common passageway or corridor to the two stores. In her declaration plaintiff alleges that "defendant through her agents, servants, and employees had leased same to certain persons to be used and occupied as stores open to the general public, retaining exclusive control of the concrete walk as a common entrance thereto." In her plea the defendant admits that she was the owner of premises 711 and 713 Thirteenth Street N. W., "and also admits that there was maintained a concrete walk or entrance from the main sidewalk to the entrance of said stores and that on, to wit, the 18th day of November, 1926, the plaintiff fell on said concrete walk." As ruled in the Talmadge Case, supra, such an admission forecloses the right of the defendant now to claim that she had no responsibility with relation to the corridor.

Was this public corridor or passageway reasonably safe for users exercising due care? The rise or step was over three feet inside the corridor and six feet from the doorways of the stores. Prior to the alterations the step or rise was at the entrance or threshold to the store (then not divided), where such conditions reasonably might be expected, but persons using the corridor would have no more reason to expect such a rise or step one-third of the way from the entrance than they would in the store itself. Pedestrians crossing a street may anticipate an abrupt difference in grade when reaching the sidewalk, but may not be expected to anticipate an abrupt rise or step in the middle of the sidewalk like that in the corridor in the present case.

We are clearly of the view that it was a question for the jury whether this passageway as constructed was reasonably safe for persons lawfully using it.

We are also of the view that the question of contributory negligence was likewise for the determination of the jury. Altemus v. Talmadge, —— App. D. C. ——, 58 F.(2d) 874; Mosheuvel v. District of Columbia, 191 U. S. 252, 24 S. Ct. 57, 48 L. Ed. 170; Bloomer v. Snellenburg, 221 Pa. 25, 69 A. 1124, 21 L. R. A. (N. S.) 464.

In her plea defendant alleged "that on said concrete walk leading to the entrance of said stores, at or about the building line, there was a step of approximately five inches in height." The height of this step was thus put in issue. Two witnesses were called by plaintiff, one a civil engineer and the other a "transit man" in the District of Columbia highway department. It appeared from their testimony that Thirteenth street was widened, and the job completed in November, 1924, and that there had been no change in the grading since; that the sidewalk rises one-half inch to the foot from the existing curb line up to the bay window line. The witnesses were then asked whether they as engineers could state "the height of any step that was there in 1926, November, 1926," assuming that there had been no change in the grade of the pavement. Counsel for the defendant objected "on the ground that if it were admitted it would necessarily appear to the jury that the step or rise over which the plaintiff claims she tripped and fell had been removed by the defendant."

It is undoubtedly the rule that in an action for injuries caused by defective conditions evidence of subsequent change or repair of the alleged defect is not competent evidence of negligence in the original construction. The reasons for this rule are that the taking of such precautions against the future should not be construed as an admission of responsibility for the past, and that such evidence is calculated to create a prejudice against the defendant. Columbia & P. S. R. Co. v. Hawthorne, 144 U. S. 202, 207, 12 S. Ct. 591, 36 L. Ed. 405.

Scott v. District of Columbia, 27 App. D. C. 413, 421, is relied upon by defendant. In that case a witness who had testified as to the alleged defective condition of the sidewalk at the time of the accident was then asked whether that condition had been changed two days thereafter. The sole purpose of the question, therefore, was to prove negligence in the original condition by proving a change. In the present case the purpose of the prof-

fered testimony was not to show change but to prove conditions existing at the time of the accident. The question did not call for any statement as to a change. While later plaintiff and another witness testified as to the height of the step at the time of the accident, the testimony of the experts was important in view of the plea of the defendant, and in our opinion should have been received in evidence.

 One of the civil engineers was later asked the following question: "In your experience as an engineer and builder, was this a usual or an unusual place to have such a step in a passageway leading up to the entrance to stores?" This question was objected to, and the objection sustained, on the ground that the jury was competent to determine evidence. This ruling was right. The jury was as competent as the witness to determine the question of negligence. King v. Davis, 54 App. D. C. 239, 296 F. 986; Branan v. Wimsatt, 54 App. D. C. 374, 298 F. 833, 36 A. L. R. 14.

Judgment reversed, with costs, and the cause remanded for a new trial.

Reversed and remanded.