**WASHINGTON LOAN & TRUST CO., Inc.,
v. HICKEY.**

No. 8371.

United States Court of Appeals for the
District of Columbia.
Argued May 20, 1943.
Decided June 21, 1943.

Mr. Frank H. Myers, of Washington, D. C., for appellant.

Mr. Lester Wood, of Washington, D. C., with whom Mr. H. Hazen Wilson, of Washington, D. C., was on the brief, for appellee.

Before SOPER, Circuit Judge, sitting by designation, and VINSON and EDGERTON, Associate Justices.

EDGERTON, Associate Justice.

This appeal is from a judgment for the plaintiff in a personal injury suit. The complaint charged, and it was proved without dispute, that appellee was passing the front entrance of the McGill Building when a window ventilator fell and injured her. The McGill Building is a seven-story office building. Appellant as trustee owned and operated it and leased offices to various tenants. It leased the fourth floor to the District of Columbia Workmen's Compensation Commission. That floor had window ventilators though most floors did not. Immediately after the accident a witness looked up, saw that there were ventilators in other fourth-floor windows but none in the one directly over the building entrance, and therefore inferred that the one which injured appellee fell from that window. Appellant concedes that this inference was

correct. The witness could not say whether the window was open or shut. The accident happened at about 3:30 on a cold and windy Saturday afternoon in February, 1941.

Saturday afternoon was a half-holiday in the Commission's office, and all the Commission's employees were gone. But appellant's building superintendent was in the building and appellant's charwoman was in the Commission's offices on the fourth floor. Whether or not she was in the particular room from which the ventilator fell does not appear. She had found the office locked and had used her key to enter. She commonly locked the door behind her when she entered the offices, and it may be inferred that she did so on this occasion. This charwoman, who was a witness for appellant, said that she cleaned the office between two and five o'clock on the afternoon of the accident but did not touch the window or the ventilator; that she never opened or closed widows; and that the windows were all closed.

Appellant did not install or own the ventilators. The building superintendent, who was called as a witness by appellee, testified that he did not know until the accident happened that ventilators were in use; but there was undisputed testimony that they had in fact been in use for six months or more. The ventilator was "adjustable to fit any window" and collapsible. It weighed about three pounds, and was 12 or more inches wide and 44 or more inches long. It admitted air through slots in its center. The superintendent said: "You put it in the window sill and opened it out, and the guide that would guide the window would hold it. * * * They couldn't fall out when they were in the windows, in the guides that hold the window frames. You would have to de-collapse them to get them out." He said in answer to a question that the window could not be closed with the ventilator in it. He then volunteered the information that "you could put it on the outside and close it down." This last statement would support an inference that when the windows were closed the ventilators were ordinarily put on the outer window ledges. He was asked, "Didn't it have a little adjusting screw that when you extended it it fitted it to any window?" He replied: "Yes, sir, they were on there, but they were not constructed very well mechanically and none of them ever held." He also testified that appellant "would not permit" the use of any movable ventilators and that it was "a violation of the lease" to use them.

Appellant's lease to the Compensation Commission required appellant to furnish electric current, lighting fixtures, sockets, bulbs, water, heat, elevator service, toilet facilities and supplies, window shades and awnings, janitor service for daily cleaning of the offices, and service for keeping the lighting, heating and plumbing fixtures in repair. Appellant also agreed to keep the leased premises in repair, and reserved the right to enter and inspect them at reasonable times. Keys to all offices were available to appellant's superintendent and appellant's head charwoman. Appellant's other charwomen carried keys to the offices on their particular floors. The superintendent said that the charwomen usually opened windows for ventilation when they entered an office, and that they closed all windows when they left.

■ The court instructed the jury that an inference arose, from the happening of the accident, that it was caused by some negligent conduct on the part of the person in charge of the building, and that if this inference preponderated over contrary evidence it would warrant a verdict for the plaintiff (appellee). But the court also instructed the jury that they should not hold the defendant (appellant) responsible unless they found that a dangerous condition existed in respect to the ventilator, that the defendant failed to exercise ordinary care in respect to it, and that this neglect proximately contributed to the accident. The verdict and judgment were for the plaintiff and the defendant appealed.

■ In our opinion the instruction was correct and the evidence supports the verdict. A landlord who keeps control of part of his building and leases space to different tenants must use care to keep the windows and screens,[1] and the exterior generally, of the leased space from becoming dangerous to passersby. It was appellant's duty not merely to refrain from doing dangerous acts or creating dangerous conditions in or on the outer surface of its building; it was also its duty to use reasonable care, i.e., to make reasonable efforts, to discover and to eliminate such conditions if others created them.[2] The question in

---

[1] Murray v. Frick, 277 Pa. 190, 121 A. 47, 29 A.L.R. 74.

[2] Cf. Security Savings & Commercial Bank v. Sullivan, 49 App.D.C. 119, 261

this case is whether a reasonable jury might think it substantially more probable than improbable that the falling of the ventilator was caused by neglect of these duties. As in other civil cases, a balance of probability is enough. "The idleness of any talk of 'certainty' has been long since exposed, and 'legal certainty' is a mere phrase."[3]

There was no evidence that the ventilator had been left in an unusual position or that anyone pushed, jarred or dropped it from the window. In the absence of such evidence it might be thought more probable that it was left in some usual position and was blown from that position by the wind. It might be thought to follow that the ventilator in some usual position was so insecure as to be a menace to persons in the street, and that this insecurity caused the accident. The same conclusion is supported by the superintendent's testimony that appellant would not permit the use of movable ventilators, that it was a violation of the lease to use them, and that the catches on the ventilators were defective; also by his intimation that the ventilators were ordinarily left on the outer ledges when the windows were closed. Though appellee called the superintendent as a witness, she was not concluded by his testimony that he knew nothing about the ventilators until the accident happened.[4] Whether or not he actually knew about them, he and appellant's other employees had abundant opportunities to learn that they were used, how they were used, and that their use was dangerous. It might well be thought that if appellant had used reasonable care it would have discovered that their use was dangerous and would have insisted that they be used safely or else removed.

The charwoman's testimony that the window was closed at the time of the accident was, in effect, testimony that the ventilator which fell had been left on the outer ledge. The jury were entitled to believe this testimony. If the accident was not due to the ventilator's being left in a dangerous position it was almost certainly due to negligent conduct on the part of appellant's charwoman, notwithstanding her assertion that she did not touch the window or the ventilator; for she was the only person in the offices at the time of the accident.

Appellant urges that the case is not within the principle of res ipsa loquitur. This question is more interesting than important. "The phrase is nothing but a picturesque way of describing a balance of probability on a question of fact on which little evidence either way has been presented."[5] The principle behind the phrase is one of inclusion, not exclusion. A plaintiff whose case comes within the principle is entitled to go to the jury, but no plaintiff who makes a probable case is disentitled to go to the jury by the fact that his case does not come within it or goes beyond it. The principle in question is simply that when the cause of an accident is (1) known, (2) in the defendant's control, and (3) unlikely to do harm unless the person in control is negligent, the defendant's negligence may be inferred without additional evidence.[6] There is nothing arbitrary or technical about the principle except its name. In this case, additional evidence tending to show negligence was introduced; otherwise the case is within the principle. (1) The cause of the accident is known; a falling ventilator. (2) The "control" required is simply such control or right of control as actually makes it probable that the defendant was negligent in exercising or failing to exercise it. Such control appellant had;[7] probably during the Commission's office hours, and certainly at the time of the accident. Some courts say that the defendant's control must be "exclusive" to be within the principle. Even such a requirement would be met in this case. Appellant was entitled and bound to keep the outside of its building as safe as reasonable inspection and care would make it. Appellant had the right to enter the offices. At the time of the accident appellant's tenants were absent. The office was locked. Appellant had keys. Appellant's superinten-

F. 461 (vault under sidewalk of leased premises); Altemus v. Talmadge, 61 App.D.C. 148, 58 F.2d 874; Walker v. Dante, 61 App.D.C. 175, 58 F.2d 1076.

[3] E. R. Thayer, Liability without Fault, 29 Harv.L.Rev. 801, 807.

[4] Alamo v. Del Rosario, 69 App.D.C. 47, 98 F.2d 328.

[5] E. R. Thayer, Liability without Fault, 29 Harv.L.Rev. 801, 807.

[6] San Juan Light Co. v. Requena, 224 U.S. 89, 98, 32 S.Ct. 399, 56 L.Ed. 680; Fisher v. Washington Coca-Cola Bottling Works, 66 App.D.C. 7, 84 F.2d 261, 105 A.L.R. 1034.

[7] Cf. Security Savings & Commercial Bank v. Sullivan, 49 App.D.C. 119, 261 F. 461; Altemus v. Talmadge, 61 App. D.C. 148, 58 F.2d 874; Walker v. Dante, 61 App.D.C. 175, 58 F.2d 1076.

dent was in the building and appellant's charwoman was in the office. (3) Unexplained falls of window panes, screens, and the like from buildings into streets support an inference of negligence.[8] Ventilators, like other objects, are not likely to fall from buildings without negligence on the part of the person in control. Finally, the practical and equitable considerations which concur with probability as a basis for the res ipsa loquitur principle are present, for evidence regarding the cause of the accident was peculiarly available to appellant and not readily available to appellee.

Affirmed.

Associate Justice VINSON took part in the consideration of this case and agreed in the result, but resigned before the opinion was written.

[8] Pearson v. Ehrich, 148 App.Div. 680, 133 N.Y.S. 273; Sinkovitz v. Peters Land Co., 5 Ga.App. 788, 64 S.E. 93; Southwestern Telegraph & Telephone Co. v. Sheppard, Tex.Civ.App., 189 S.W. 799; note 29 A.L.R. 77.