Minnie LINDSEY, Appellant,

v.

D. C. TRANSIT COMPANY, a *corporation*, Appellee.

No. 2064.

Municipal Court of Appeals for the District of Columbia.

Argued Nov. 12, 1957.

Decided April 15, 1958.

10. Donati v. Church, 1951, 13 N.J.Super. 454, 80 A.2d 633, 634.

Harry C. Lewis, Washington, D. C., with whom Howard A. Vogel, Washington, D. C., was on the brief, for appellant.

Allan C. Swingle, Washington, D. C., for appellee. Edwin A. Swingle, Washington, D. C., also entered an appearance for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

ROVER, Chief Judge.

By this appeal plaintiff seeks to reverse a judgment on a directed verdict in favor of Capital Transit in a suit to recover damages for injuries allegedly caused when the bus on which she was a passenger came to a sudden stop.

In her complaint plaintiff charged the bus company with specific negligence and in the alternative relied on the doctrine of *res ipsa loquitur*. Defendant countered with contributory negligence and alleged in its defense that the sudden stop was necessitated by a traffic emergency.

The testimony of both sides is plagued with conflict and variation; however, a fair appraisal of the testimony establishes that plaintiff boarded defendant's bus at 14th and P Streets, N.W., early one afternoon en route to her place of work. Rain had fallen throughout the morning and the streets were still wet. About one block from her destination, at 31st and P Streets, plaintiff left her seat and walked to the front of the bus where she stood facing the exit waiting for the bus to arrive at her stop. While holding on to a railing for support, " * * * all of a sudden there was a terrific jerk that threw me over into the windshield with my head, and the impact brought me back against that long rod there on the stairs, that got me all shook up temporarily, I didn't know just where I was for a moment or so." As a result plaintiff claimed injuries to her head, back, and neck. A passenger on the bus testified, " * * * the bus suddenly stopped, and she [plaintiff] struck her head against the window." On cross-examination plaintiff recalled seeing a parked delivery truck on the highway.

Testifying for the defense, the bus operator stated that the bus was traveling in a westerly direction on P Street at approximately 15 miles per hour. The width of the street and cars parked on the south side permitted only a single lane of traffic in either direction. His view was unobstructed, and when the bus was between 29th and 30th Streets he could see that a delivery truck was parked in his lane of traffic midway between 30th and 31st Streets. Almost simultaneously, the bus driver said, he observed a trailer truck traveling east on P Street, and realizing that the oncoming truck had the right-of-way brought his bus to a "normal stop" about one bus length behind the parked delivery truck. No collision occurred.

A police officer, testifying as a rebuttal witness for the plaintiff, stated that during his investigation immediately following the accident, the bus driver told him he had applied the brakes suddenly. Plaintiff in rebuttal quoted a similar statement made by the bus operator following the accident to the effect that he had applied the brakes to avert a collision.

Defendant's motion for a directed verdict at the conclusion of plaintiff's case was de-

**308**

nied. In granting defendant's motion at the close of all evidence, the trial court ruled that by pleading and proving allegations of specific negligence, plaintiff was not entitled to go to the jury on the theory of *res ipsa loquitur*. The court further held that there were no facts from which defendant's negligence might be inferred. These rulings constitute the salient issues of this appeal.

Early cases in this jurisdiction hold that a plaintiff is foreclosed from the benefit of *res ipsa loquitur* where specific acts of negligence are alleged in the pleadings. This is also true where general negligence is pleaded and specific negligence is proved at trial. Pistorio v. Washington Ry. & Electric Co., 46 App.D.C. 479; Sullivan v. Capital Traction Company, 34 App.D.C. 358. The rationale underlying these decisions is that by pleading specific acts of negligence, a plaintiff reveals a definite knowledge of the negligent act causing the accident; or where proof of specific negligence is shown, the cause is no longer left to inference and the need for *res ipsa loquitur* is erased from the case.[1] Ross v. Pennsylvania R. Co., D.C.Mun.App., 55 A.2d 346, decided by this court after the Federal Rules of Civil Procedure, 28 U.S. C.A., and the adoption of similar rules by the trial court, followed the logic of the earlier cases. There appears to have been no departure from the Ross holding.

Generally, in cases where *res ipsa loquitur* is relied on, the plaintiff proves only his status, the fact of the accident, and his injury. Cole v. Capital Transit Co., 90 U.S. App.D.C. 289, 195 F.2d 568. A problematical area evolves when a plaintiff goes beyond this and alleges *some* of the details of the occurrence in his pleadings or at trial introduces *some* evidence of the circumstances of the accident. The question is then what degree of evidence bearing on the cause and conditions of the accident is necessary to render the doctrine inapplicable.

In the recent case of Loketch v. Capital Transit Company, 101 U.S.App.D.C. 287, 248 F.2d 609, 610, the court laid down this test:

"* * * Evidence bringing to light the circumstances of the accident does not, as appellee contends, make *res ipsa* inapplicable. Washington Loan & Trust Co. v. Hickey, 1943, 78 U.S.App.D.C. 59, 61, 137 F.2d 677, 679. *The doctrine becomes inapplicable when the circumstances have been so completely elucidated that no inference of defendant's liability can reasonably be made.*" (Emphasis supplied.)

The relevant portion of plaintiff's complaint in the present case stated:

"* * * At or near said intersection defendant, so carelessly and negligently operated and managed said bus, through its agent and employee, that it was caused to stop suddenly, and swerve, throwing plaintiff about violently in said bus, causing her severe injuries. * * *"

In commenting on the evidence, the trial judge stated that the plaintiff's evidence on the issue of negligence was about the same as the allegations in the complaint. We agree, but believe it comes within the principles enunciated in Loketch. Neither the pleadings nor the proof reveals the particular conditions which may have been the *inducing cause* of the sudden stop. No attempt was made by plaintiff to account for the stop or explain its cause. No specific act of negligence on the part of the driver to maintain a proper lookout is mentioned. At most, beyond the fact of the accident, her status, and the injury, plaintiff's evidence tended to show weather conditions and her awareness of another vehicle stopped in the street. Though *some* evidence may tend to show the specific cause of an accident, a plaintiff should not be deprived of the benefit of the doctrine if

---

1. For a discussion of *res ipsa loquitur* and its application in the District of Co-lumbia, see 45 Georgetown L.J. 475 (1957).

after his case in chief is in, the true cause is still left in doubt or is not clearly shown.[2]

Were the stop in this instance of the jerk and jolt variety usually incident to common carrier travel, we would have no hesitancy in applying the rule of Wiggins v. Capital Transit Company, D.C.Mun.App., 122 A.2d 117, 57 A.L.R.2d 1. However, defendant contends that a traffic emergency necessitated the stop, and there is some evidence to support this. In sharp contrast the bus operator testified that his vision was unobstructed and the bus was traveling at a moderate rate of speed (15 m. p. h.). From one block away he was able to see the parked delivery truck and the oncoming trailer truck. Testimony of this kind is strikingly inconsistent with the need for a sudden application of brakes, particularly in the absence of any intervening change in traffic conditions from the moment he saw the trucks to the time of the stop.

 For the safety of its passengers, a common carrier is held to the highest degree of care commensurate with the particular hazards involved.[3] Thus all the care and caution which a motorman of reasonable skill, foresight, and prudence could fairly be anticipated to exercise is expected of defendant's operator. If an emergency stop were necessary, the question arises as to how the driver became involved in that situation and whether the proper standard of care to avoid the emergency was exercised. These are jury questions. By denying defendant's motion for directed verdict at the close of plaintiff's case, the court in effect held that plaintiff had satisfied her burden of proceeding and on the basis of the inference had introduced sufficient evidence from which a jury might infer negligence.

In view of the conflicting testimony on both sides, and because defendant's attack on the inference came in the form of an attempt to show that due care had been exercised, we are reluctant to say that on the basis of all the evidence in the case reasonable men could only conclude that defendant was not negligent.[4] The application of principles in cases of this kind is difficult, and the able trial judge has carefully considered the problems involved. We think, however, that in this instance he should have permitted the jury to determine the issues.

Reversed with instructions to grant a new trial.

---

2. Cf. Pomeroy v. Pennsylvania Railroad, 96 U.S.App.D.C. 128, 223 F.2d 593. See annotation, 33 A.L.R.2d 791.

3. Loketch v. Capital Transit Company, supra; Wiggins v. Capital Transit Company, supra.

4. See Tan Top Cab Company v. Shiller, D.C.Mun.App., 125 A.2d 68.