Roger **MACHANIC**, Appellant,

v.

Kate. **STOREY**, Appellee.

No. 17093.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 7, 1962.

Decided March 21, 1963.
Petition for Rehearing En Banc Denied May 1, 1963.

Petition for Rehearing Before the Division Denied May 6, 1963.

3. See Rosenberg v. United States, 360 U. S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 (1959); Saunders v. United States, supra note 1.

Mr. David Machanic, Washington, D. C., for appellant.

Mr. Justin L. Edgerton, Washington, D. C., with whom Messrs. Charles E. Pledger, Jr., John F. Mahoney, Jr., and R. Harrison Pledger, Jr., Washington, D. C., were on the brief, for appellee.

Before WILBUR K. MILLER, WASHINGTON and WRIGHT, Circuit Judges.

WASHINGTON, Circuit Judge.

This is an automobile accident suit in which a directed verdict was entered for the defendant at the close of the plaintiff's case. The plaintiff has appealed, contending that he presented sufficient evidence to take his case to the jury and that the District Court erroneously directed a verdict.

The plaintiff's evidence, consisting of testimony by himself and a Pennslyvania State Police Officer, who witnessed the accident from a distance of some 800 feet, may be summarized as follows:

On July 4, 1960, the plaintiff and the defendant were returning to Washington, D. C., in the plaintiff's automobile from Butler, Pennsylvania, where they had spent the holiday weekend with cousins of the defendant. They commenced the return trip at about 3 or 3:15 p. m. on the 4th. The plaintiff, a man 28 years of age, drove for about an hour and, feeling sleepy, turned over the driving to defendant, a young woman in her twenties. Approximately five minutes after she had taken the wheel, he fell asleep. They were at that time on the Pennsylvania Turnpike, a dual highway with four 12-foot lanes, separated in the middle by a 10-foot medial strip, and bordered on each side by a 10-foot shoulder or "berm." The weather was fair, the road was dry, and visibility was good. The holiday traffic was quite heavy, according to the State Police Officer. The plaintiff considered the defendant, with whose driving he was familiar, a competent and good driver in whom he had every confidence. He had no apprehension about her driving on that day. Neither he nor she had drunk any intoxicating beverage on that day. Before the plaintiff went to sleep, the defendant had stated to him that she did not feel the "least bit sleepy", and he had observed nothing to indicate that she was sleepy.

At about 4:15 p. m. the car left the Turnpike, raising a "cloud of dust" on the berm, there about 12 feet wide, and, as shown by its tracks in the dust, ran straight toward a 12-foot embankment, abutting the berm, at a "graduated slant" of 45 degrees. There were no marks to indicate skidding. The car hit the embankment, went into the air, made one complete turn in the air and then landed on the Turnpike upright on its wheels.[1] The plaintiff was thrown out through the closed sun roof of the car onto the Turnpike and was seriously injured. The defendant also suffered some injuries.

After he fell asleep, the next thing recalled by the plaintiff was that he woke up very suddenly and "felt a violent swerve in the car" and "a terrific sense of centrifugal force" in his stomach. He testified on direct examination that he "reacted instinctively to the situation," "reached over for the wheel," made "contact with it," and just then felt himself "being flung from the car" and next he was "hurtling through the air." He stated that he "didn't have control of the car in any way" in the fraction of a second before being thrown out. On cross-examination the plaintiff indicated that he had upon awakening "grabbed" or "touched" the steering wheel with both hands "in a normal driving fashion," that

he "was making an effort" to steer and "get the car back in control." He admitted that the car could then have been on the highway, and that "I assume it was," but stated that he didn't actually know where it was.

Following the accident, the tires were described as in good condition and inflated, although the left front tire was leaking slightly and in the process of deflating, and the rim on which that tire was mounted was severely damaged, to the point where the tire would not hold air. Plaintiff stated on cross-examination that the tire in question might have been on the car for as much as 35,000 miles.

The defendant was not called as a witness. The plaintiff and the State Police Officer both testified that she had stated to them that she could not explain how the accident had occurred. She told the Officer that nothing had happened to the automobile, evidently meaning that the steering mechanism had not failed.

At the close of plaintiff-appellant's case, the defense moved for a directed verdict. The motion was granted by the trial judge.[2]

In cases like the present, as we pointed out in Boland v. Love, 95 U.S. App.D.C. 337, 341, 222 F.2d 27, 31

---

1. On the basis of the times of departure and the duration of his driving as given by plaintiff in his testimony, and the time the accident occurred, the defendant could have been driving for not more than fifteen minutes when the accident happened.

2. The judge said, in pertinent part:
"There is no evidence whatever of any negligence on the part of the defendant. She was driving the car. There is no evidence that she failed to do anything that she should have done, or that she did something that she should not have done. There is no evidence that she was driving at an excessive rate of speed, or in any way recklessly. To be sure, negligence can be proven by circumstantial evidence as well as by direct evidence, but there is no circumstantial evidence in this instance from which negligence could be inferred. There are three possibilities, on the basis of the evidence, as to what caused the accident. It may have been

some inattention on the part of the defendant in permitting the car to leave its path. It may have been the sudden action of the plaintiff in grabbing the wheel that caused the accident, or it may have been a defect in the rim or tire, because the officer, when he inspected the car after the accident, found that the left front tire was gradually deflating and that the rim on which it was mounted had been damaged. Now that damage could have occurred in the accident. It could have existed previously. Consequently the jury would have to speculate as to which of the three causes was responsible for the accident. It is well settled in this jurisdiction, at least, that when the evidence is capable of proving either one of two or more possibilities, it does not prove any one. There is not even any basis upon which the jury could draw a probability, or infer a probability, that one or the other cause was responsible for the accident."

(1955), the law of the District of Columbia controls as to whether there is sufficient evidence to take the case to the jury, whereas the law of the place of injury—here, Pennsylvania—controls as to the standard of conduct required of the parties, including (to quote the Boland opinion) the question "whether the *particular conduct* involved here is or is not negligent." (Emphasis in original.) See also Tobin v. Pennsylvania R. Co., 69 App.D.C. 262, 100 F.2d 435 (1938), cert. denied, 306 U.S. 640, 59 S.Ct. 488, 83 L.Ed. 1040 (1939).

◼ Under the law of the District of Columbia, when a verdict is directed against the plaintiff at the close of his case, we must view plaintiff's case in the light most favorable to him, and give him the full benefit of every legitimate inference warranted by his evidence.[3] So viewing the plaintiff's case, we must conclude that it was error to direct a verdict for the defendant in the case at bar.

◼ Authority is overwhelming for the proposition that where an automobile leaves the highway and collides with a stationary object off the road, causing injury to a passenger, negligence on the part of the driver may be presumed or inferred (1) if the driver exclusively controlled the operation of the car, (2) if the accident would not ordinarily have happened unless the driver in control had

failed to use due care, and (3) if the cause of the accident is not otherwise explained or shown. See Annotation: "Applicability of res ipsa loquitur doctrine where motor vehicle leaves road," 79 A.L.R.2d 6 (1961), and particularly the cases referred to at 22–27, 29–44, 52–64, 73–114.[4] See also Lane v. Dorney, 252 N.C. 90, 113 S.E.2d 33 (1960); Leebove v. Rovin, 363 Mich. 569, 111 N.W. 2d 104 (1961). This is the rule followed by the Pennsylvania courts, the locale of the accident. Knox v. Simmerman, 301 Pa. 1, 151 A. 678 (1930); Brewer v. Brodhead, 341 Pa. 384, 19 A.2d 117 (1941); Kotal v. Goldberg, 375 Pa. 397, 100 A.2d 630 (1953). See also Watford v. Simon, 163 F.Supp. 664 (E.D.Pa.1958). We think the same rule should apply in this jurisdiction, and that a case arising solely within the District of Columbia on facts like the present should be allowed to go to the jury.[5]

The plaintiff's evidence was that the plaintiff's car, driven by an experienced and competent driver with his consent, left a dry straight road when visibility and driving conditions were good, no defect or obstruction in the road and no defect in the car were shown to have existed, and no interference by or collision with another vehicle was indicated. The possibilities that a sudden skid or a blowout of a tire had occurred were eliminated by the evidence. All the tires were in-

3. Shewmaker v. Capital Transit Co., 79 U.S.App.D.C. 102, 143 F.2d 142 (1944); Higashi v. Shifflett, 90 U.S.App.D.C. 302, 195 F.2d 784 (1952); Peigh v. Baltimore & O. R. Co., 92 U.S.App.D.C. 198, 204 F.2d 391, 44 A.L.R.2d 671 (1953); Chambers v. Tobin, 92 U.S.App.D.C. 274, 204 F.2d 732 (1953); Kendall v. Gore Properties, 98 U.S.App.D.C. 378, 236 F.2d 673 (1956). See also Tobin v. Pennsylvania R. Co., supra.

4 The cases there cited holding in favor of the driver appear to have done so because all of the conditions which must exist to support the inference of negligence did not there appear or because the evidence just as reasonably supported an inference that the accident was caused by something other than the driver's negligence. See cases at 79 A.L.R.2d 68–70, 103–114. In Faulk v. Soberanes, 56

Cal.2d 466, 14 Cal.Rptr. 545, 363 P.2d 593 (1961), it was held that the driver's negligence was not to be inferred as a matter of law but that the inference of negligence might properly have been made by the jury under proper instructions, had it resolved the factual issues in a way to support the inference.

5. This view appears to be quite consonant with our statement in Haw v. Liberty Mut. Ins. Co., 86 U.S.App.D.C. 86, 91, 180 F.2d 18, 23 (1950):
"It has been held consistently that when a moving vehicle strikes a stationary object which is not out of its proper place, a prima facie case of negligence is established." (Citing Bonbrest v. Lewis, 54 A.2d 751 (D.C.Mun. App.1947); Schwartzbach v. Thompson, 33 A.2d 624 (D.C.Mun.App.1943).)

flated following the accident, but the rim of the left front tire was found damaged. Since the damage to the rim was such that the tire would not hold air, and since the left front tire was inflated (although leaking) immediately following the accident, it is a reasonable inference, and the one required for purposes of disposing of the motion for a directed verdict, that the rim became damaged in the accident and thus was not the cause of, or one of the things which might have caused, the accident.

In the absence of anything more, the accident being otherwise unexplained, it is obvious that the car would not ordinarily have left the road and collided with the embankment unless someone had been negligent, and the inference is certainly permissible that the accident resulted from the driver's negligence, assuming that the defendant driver had control over the driving. Since the plaintiff testified that he did not control the car in any way, and his other testimony on direct examination could be taken as tending to support this categorical conclusion, we are required, for purposes of the motion for a directed verdict, to treat this testimony favorably and assume that the defendant was in exclusive control. Clearly, then, the plaintiff's evidence made a case for the jury, and the jury, if it credited his statement that he was not in control, could find that the defendant driver controlled the driving, that she must have been and was negligent, and that this negligence caused the accident and the resulting injury to the plaintiff.

 To be sure, the plaintiff's testimony on cross-examination can be re-

garded as raising a question as to whether the defendant-driver did have exclusive control over the driving—that is, whether or not the plaintiff's actions in putting both hands on the wheel in driving position in an effort to gain control, wrested control away or so interfered with the driver's control over the driving as to deprive her of effective control or otherwise to be the proximate or intervening cause of the accident and resulting injury. This factual question could only be resolved by a jury after hearing the plaintiff's evidence and that to be presented by the defendant, who may well be able to throw additional light on the question of control and the reason for the accident. But, as pointed out, on the basis of the plaintiff's evidence alone, and giving him the advantage of every inference his evidence supports, a jury could reasonably have found, under proper instructions, that the defendant controlled the operation of the car, that she was or must have been negligent, and that her negligence caused his injuries. It was thus error to take the case from the jury and direct a verdict. See Tobin v. Pennsylvania R. Co., supra, 69 App. D.C. at 265, 100 F.2d at 438.[6]

We have found no case in Pennsylvania or in this jurisdiction involving the situation where the steering wheel was seized or grabbed for by a passenger immediately prior to an accident. But cases from other jurisdictions presented with such a situation have treated the matter as something to be decided by the jury.[7]

Since we think that it could reasonably have been found from the plaintiff's evidence, construed most favorably to him, that the defendant's negligence caused

---

6. Cf. the statement of Judge Parker in Garrison v. United States, 62 F.2d 41, 42 (4th Cir. 1932):

"* * * Where there is substantial evidence in support of plaintiff's case, the judge may not direct a verdict against him, even though he may not believe his evidence or may think that the weight of the evidence is on the other side; for, under the constitutional guaranty of trial by jury, it is for the jury to weigh the evidence and pass upon its credibility."

7. See, for example, Brock v. Pillion, 277 S.W.2d 27 (Ct.Apps.Ky., 1955); Dobbs v. Sugioka, 117 Colo. 218, 185 P.2d 784 (1947); Brainerd v. Stearns, 155 Wash. 364, 284 P. 348 (1930); McCord v. Benford, 48 Ga.App. 738, 173 S.E. 208 (1934); and Petway v. McLeod, 47 Ga. App. 647, 171 S.E. 225 (1933). See also Murphree v. Campbell, 266 Ala. 501, 97 So.2d 892 (1957); cf. Robinson v. Butler, 226 Minn. 491, 33 N.W.2d 821, 4 A. L.R.2d 143 (1948); La Drig v. Renike, 312 Mich. 277, 20 N.W.2d 189 (1945).

his injuries, the judgment is reversed and the cause remanded to the District Court for further proceedings not inconsistent with this opinion.

So ordered.

WILBUR K. MILLER, Circuit Judge (dissenting).

In my view, the trial judge correctly directed a verdict for the defendant for the reasons stated by him. The plaintiff failed to prove any negligent act or omission on the part of the defendant and the doctrine of *res ipsa loquitur* does not help him. My colleagues state in their opinion:

> " * * * On cross-examination the plaintiff indicated that he had upon awakening 'grabbed' or 'touched' the steering wheel with both hands 'in a normal driving fashion,' that he 'was making an effort' to steer and 'get the car back in control.' He admitted that the car could then have been on the highway, and that 'I assume it was,' but stated that he didn't actually know where it was."

A sleeping passenger in a car traveling at turnpike speed who awoke and grabbed the steering wheel cannot consistently say the accident which followed immediately would not have happened if the driver had not been negligent. Nor can he say the automobile was under the exclusive control of the driver. Hence, *res ipsa* is not applicable.

It follows that the plaintiff's failure to prove any negligent act or omission on the part of the defendant and his own admissions on cross-examination made it clear that a verdict should have been, as it was, directed for the defendant.

The majority say:

> "Authority is overwhelming for the proposition that where an automobile leaves. the highway and collides with a stationary object off the road, causing injury to a passenger, negligence on the part of the

driver may be presumed or inferred (1) if the driver exclusively controlled the operation of the car, (2) if the accident would not ordinarily have happened unless the driver in control had failed to use due care, and (3) if the cause of the accident is not otherwise explained or shown. See Annotation: 'Applicability of res ipsa loquitur doctrine where motor vehicle leaves road,' 79 A.L.R. 2d 6 (1961) * * *."

The A.L.R. annotation cited in support of this statement shows that the authority therefor is not overwhelming; indeed the annotation points out that there are different lines of authority. But even under the Pennsylvania rule as stated by the majority, there could be no inference here that appellee was negligent because (a) the driver did not have exclusive control of the operation of the car, and (b) the cause of the accident is "otherwise explained or shown,"—that is, by appellant's admitted interference with appellee's driving.

After describing what they say is the Pennsylvania rule of *res ipsa*, the majority add, "We think the same rule should apply in this jurisdiction" and so infer that the District of Columbia rule should be changed. In Washington Loan & Trust Co. v. Hickey,[1] Judge Edgerton succinctly defined *res ipsa loquitur* by saying:

> " * * * The principle in question is simply that when the cause of an accident is (1) known, (2) in the defendant's control, and (3) unlikely to do harm unless the person in control is negligent, the defendant's negligence may be inferred without additional evidence. * *"

I think this definition is satisfactory.

In Brown v. Capital Transit Co.[2] this court said:

> "Where the res ipsa loquitur doctrine is applicable, it means no more than that the party claiming damages has produced proof of a fact, or a

---

1. 78 U.S.App.D.C. 59, 61, 137 F.2d 677, 679 (1943).

2. 75 U.S.App.D.C. 337, 338, 127 F.2d 329, 330 (1942).

series of related facts, which warrant the inference of negligence, not that they compel such an inference. The rule is so stated by the Supreme Court in Sweeney v. Erving, 228 U.S. 233, 33 S.Ct. 416, 57 L.Ed. 815. Where, as here, it is a matter of surmise that the damage was due to a cause for which the defendant is liable, the doctrine is inapplicable. If causes other than the negligence of the defendant might have produced the accident, the plaintiff is bound to exclude the operation of such causes by a fair preponderance of the evidence. Here the sum and substance of appellant's evidence is that an injury occurred."

In this case also, the sum and substance of appellant's evidence is that an accident occurred.

The majority admit that "the law of the District of Columbia controls as to whether there is sufficient evidence to take the case to the jury," as we said in the much cited case of Tobin v. Pennsylvania R. Co." [3]

"The law applicable to the case, so far as it concerns the standard of conduct required of the parties, is the law of the place of injury, hence, the law of Pennsylvania; *but the application of the standard must be made according to the law of the forum* for that is a procedural matter. Consequently, the question whether there is sufficient evidence to take the case to the jury must be determined according to the law of the *District of Columbia.*" (Emphasis added.)

To be sure, the standard of conduct is that required by the law of the place of injury; but our rule has been heretofore that application of the standard, that is, whether the evidence shows the defendant violated it and so was negligent, is governed by the rule of the forum. So, a defendant's motion for a directed verdict in an action based on negligence must be granted if, on the evidence, no reasonable men could reach a verdict for the plaintiff. In this respect, we said in the Tobin case:[4]

"* * * [A] mere scintilla of evidence is not sufficient; the question is not whether there is any evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party upon whom the *onus* of proof is imposed; the burden being upon the plaintiff to establish the negligence and injury alleged, if the evidence fails adequately to support either element, the motion [for a directed verdict] should be granted."

As proof was admittedly absent, the jury could only have speculated that defendant was negligent and so was liable. My understanding has always been that such speculation is not permitted. I would affirm.

---

3. 69 App.D.C. 262, 263, 100 F.2d 435, 436 (1938), cert. denied 306 U.S. 640, 59 S.Ct. 488, 83 L.Ed. 1040 (1939).

4. 69 App.D.C. at 263, 100 F.2d at 436.